UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BANCO POPULAR DOMINICANO, C. Por A.

        Plaintiff and Counterclaim Defendant,

vs.

LEVI STRAUSS & CO.,

        Defendant and Third Party Plaintiff,

vs.

INTERAMERICANA APPAREL COMPANY, INC.;
INTERAMERICANA PRODUCTS
INTERNATIONAL, S.A.; QST DOMINICANA
LLC; US PAPER & CHEMICAL; APPAREL
MACHINERY & SUPPLY CO.; YKK SNAP
FASTENERS AMERICA, INC.; SOUTHERN
TEXTILE DOMINICANA, INC; INDUSTRIA
CARTONERA DOMINICANA, S.A. (Smurfit);
THE GRAPHIC LABEL GROUP DOMINICANA,
INC.; and TAG-IT PACIFIC, INC.,

        Third-Party Defendants.

07 Civ. 6443 (LTS)(THK)

## MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY DEFENDANT QST DOMINICANA LLC'S MOTION TO DISMISS FOR FORUM NON CONVENIENS

VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

Attorneys for Third Party Defendant
*QST Dominicana LLC*

TABLE OF CONTENTS

Page

PROCEDURAL HISTORY.................................................................................................. 1

STATEMENT OF THE CASE........................................................................................... 2

SUMMARY OF ARGUMENT .......................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.      THE DOCTRINE OF FORUM NON CONVENIENS ......................................... 3

II.     THE DOMINICAN REPUBLIC PROVIDES AN ALTERNATIVE FORUM FOR THIS CASE AND ALL PARTIES WITH A CLAIM TO THE STAKE ARE AMENABLE TO PROCESS IN THE ALTERNATIVE FORUM....................... 6

III.    THE PRIVATE INTEREST FACTORS CLEARLY AND UNAMBIGUOUSLY FAVOR THE DOMINICAN REPUBLIC AS THE APPROPRIATE FORUM FOR THIS CASE ...................................................................................................... 7

IV.    THE PUBLIC INTEREST FACTORS CLEARLY AND UNAMBIGUOUSLY FAVOR THE DOMINICAN REPUBLIC AS THE APPROPRIATE FORUM FOR THIS CASE ...................................................................................................... 9

V.     OTHER FACTORS ALSO WEIGH IN FAVOR OF THE DOMINICAN REPUBLIC AS THE APPROPRIATE VENUE FOR THIS CASE ................................... 10

    (A)   There Should Be No Deference to Plaintiff's Choice of Forum............................... 10

    (B)   Any Differences In Substantive Law Between Dominican Republic Law and the Law of this Forum Are to be Given Very Little Significance in the Analysis.................................................................................................................. 11

    (C)   Any Difference In Procedural Law Between Dominican Republic Law and the Law of this Forum Is to be Given Very Little Significance in the Analysis ...... 12

    (D)   The Likely Application of Dominican Republic Law to the Case Strongly Favors the Dominican Republic as the Appropriate Forum ...................................... 14

CONCLUSION..................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Aguinda v. Texaco, Inc.,*
    303 F.3d 470 (2d Cir. 2002).......................................................................... 4, 5, 13, 14

*American Dredging Company v. Miller,*
    510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994)......................................... 3, 5, 9

*Blanco v. Banco Industrial de Venezuela,*
    997 F.2d 974 (2d Cir. 1993).................................................................................*passim*

*Borden, Inc. v. Meiji Milk Products Co. Ltd.,*
    919 F.2d 822 (2d Cir. 1990).......................................................................................... 13

*Brazilian Investment Advisory Services, LTDA v. United Merchants & Mfg., Inc.,*
    667 F.Supp. 136 (S.D.N.Y.1987) ............................................................................... 13

*Broadcasting Rights International Corp. v. Societe Tour de France, S.A.R.L.,*
    708 F.Supp. 83 (S.D.N.Y. 1989).......................................................................... 12, 13

*Bybee v. Oper der Standt Bonn,*
    899 F.Supp. 1217 (S.D.N.Y. 1995) ........................................................... 7, 8, 14, 15

*Capital Currency Exchange, N.V. v. National Westminster Bank PLC,*
    155 F.3d 603 (2d Cir. 1998)........................................................................ 4, 10, 11, 12

*Castillo v. Shipping Corp. of India,*
    606 F.Supp. 497 (S.D.N.Y. 1985) ............................................................................ 7, 8

*Corporacion Tim, S.A. v. Schumacher,*
    418 F.Supp.2d 529 (S.D.N.Y. 2006)................................................................... 4, 8, 13

*Fitzgerald v. Texaco, Inc.,*
    521 F.2d 448 (2d Cir. 1975)......................................................................................... 8

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ..................................................... 5

*Iragorri v. United Technologies Corporation,*
    274 F.3d 65 (2d Cir. 2001)......................................................................................... 11

*Murray v. British Broadcasting Corporation,*
    81 F.3d 287 (2d Cir. 1996)...................................................................................*passim*

*Panama Processes, S.A. v. Cities Service Co.*,
    500 F.Supp. 800 (S.D.N.Y, 1980) ......................................................................... 13

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)............................................*passim*

*Pollux Holding Ltd. v. The Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003)...................................................................... 5, 10, 11

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998)......................................................................... 6, 7, 12

*Scottish Air International, Inc. v. British Caledonian Group, PLC*,
    81 F.3d 1224 (2d Cir. 1996)....................................................................*passim*

**Statutes**

28 U.S.C. § 1404.......................................................................................... 5

*Moore's Federal Practice*, § 111.74 ............................................................ 7

## MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY DEFENDANT QST DOMINICANA LLC'S MOTION TO DISMISS FOR FORUM NON CONVENIENS

Third Party Defendant QST Dominicana LLC ("QST"), by its attorneys Vedder, Price, Kaufman and Kammholz, P.C., hereby submits this memorandum of law in support of its Motion to Dismiss this action under *forum non conveniens*. Dismissal is appropriate under the doctrine of *forum non conveniens* because: all of the events underlying this lawsuit occurred in the Dominican Republic; all parties in interest are citizens of the Dominican Republic and/or are amenable to service in the Dominican Republic; the Dominican Republic provides an adequate alternative forum; and the Dominican Republic is the most appropriate forum for this matter.

## PROCEDURAL HISTORY

On July 16, 2007, Plaintiff Banco Popular Dominicano, C. por A. ("Plaintiff" of "Banco Popular") filed its complaint, against defendant Levi Strauss & Co. ("Levis" or "Third Party Plaintiff"). On August 27, 2007, Levis filed its Answer, Counterclaim and Third Party Complaint in Interpleader against ten third party defendants, including QST. On August 28, 2007, this Court's Cashiers Office filed its Registry Deposit indicating that Levis had deposited $2,325,132.27 into the Court—an amount Levis concedes it owes to borrowers in default on a loan from Plaintiff. On August 29, 2007, Levis served its Third Party Complaint on QST. On October 1, 2007, Levis and third party defendant Tag-It Pacific, Inc. ("Tag-It") filed a stipulation dismissing Tag-It from the case, with prejudice. As of the date hereunder, Tag-It is the only party that has been dismissed from the case with prejudice.

1

## STATEMENT OF THE CASE

The Complaint seeks a declaratory judgment from the Court ordering Levis to pay $2,350,538.48 to Plaintiff.[1]  Plaintiff made a secured loan to a group of borrowers that included third party defendants Interamericana Apparel Company, Inc. and Interamericana Products International, S.A. (collectively, "Interamericana").  As part of that agreement, Interamericana granted Plaintiff a security interest in its accounts receivable, and later Interamericana defaulted on its loan payments to Plaintiff.  In response to the Complaint, although challenging the precise amount in dispute, Levis concedes that it owes $2,325,132.27 (the "Stake") to Interamericana. Interamericana, however, owes money to Plaintiff and to other creditors, including QST. Accordingly, Levis brings its Third Party Complaint In Interpleader against all known parties with competing claims to the Stake—the third party defendants—all but one of which are citizens of the Dominican Republic (Exhibit 2 to Notice of Motion, Levis Third Party Complaint, ¶¶ 1-11).  Levis has deposited the Stake into the Court's coffers, and now leaves it to this Court to determine to whom the Stake should be distributed.

## SUMMARY OF ARGUMENT

For reasons of convenience for all parties, the completing claims for the Stake should be tried in the Courts of the Dominican Republic—not the District Court of New York or any other U.S. Court.  United States Courts have long recognized the adequacy of the Dominican Republic legal system to administer justice and all real parties in interest are citizens of the Dominican Republic and are amenable to service there.  Thus, the Dominican Republic provides an adequate alternative forum under the required *forum non conveniens* analysis.

---

[1]  Plaintiff also asserts related claims based on foreclosing on its security interest, unjust enrichment and injunctive relief prohibiting Levis from in any way transferring the disputed funds.

All parties with a real interest in the Stake are Dominican Republic corporations. Further, the underlying loan from Plaintiff on which Interamericana has defaulted is a loan between two Dominican Republic companies and is likely governed by Dominican Republic law. Plaintiff and all third party defendants with a potential claim to the Stake are Dominican Republic companies whose claims will likely be governed by Dominican Republic law. All or nearly all likely witnesses reside in the Dominican Republic, all or nearly all relevant documentary evidence will be found in the Dominican Republic and most—if not all—of the relevant documents will require certified translations from Spanish to English if the case is heard in this Court.

In short, the relevant private interest and public interest factors set forth by the Supreme Court for a *forum non conveniens* balancing inquiry weigh heavily in favor of dismissal in favor of the Dominican Republic as the proper forum for this case. Accordingly, this case should be dismissed because this forum is not the appropriate forum. If any party wishes to proceed with the matter after dismissal, it can bring this suit in the far more appropriate forum of the Dominican Republic.

## **ARGUMENT**

### I.    **The Doctrine of *Forum non Conveniens***

"Under the federal doctrine of *forum non conveniens*, 'when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case,' even if jurisdiction and proper venue are established." *American Dredging Company v. Miller*, 510 U.S. 443, 447-448, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (quoting *Piper Aircraft Co. v. Reyno*, 454

3

U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981)). "In deciding where a trial should be held the central notions of the doctrine of *forum non conveniens* are the convenience of the parties and their witnesses and that justice be served." *Scottish Air International, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1227 (2d Cir. 1996). "The doctrine of *forum non conveniens* permits a court to 'resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute, if dismissal would best serve the convenience of the parties and the ends of justice.'" *Murray v. British Broadcasting Corporation*, 81 F.3d 287, 290 (2d Cir. 1996)(citations omitted). The doctrine permits "displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *American Dredging*, supra, 510 U.S. at 453.

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process in the other jurisdiction.'" *Piper*, supra, 454 U.S. at 254, n22 (citations omitted); *see also Murray*, supra, at 292; *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002). Where the parties are amenable to process in an alternative forum, a court may find the alternative forum inadequate "only where there is a complete absence of due process and an inability of a plaintiff to obtain substantial justice." *Corporacion Tim, S.A. v. Schumacher*, 418 F.Supp.2d 529, 532 (S.D.N.Y. 2006).[2]

---

[2] As a strictly procedural matter, the doctrine of *forum non conveniens* applies "only in cases where the alternative forum is abroad." *American Dredging*, supra, 510 U.S. at 449, fn2. When another U.S. District Court provides the alternative forum, the proper remedy is transfer pursuant to the federal venue transfer statute—28 U.S.C. § 1404(a). *Id*. "[F]orum non conveniens cases are *dismissed* in anticipation of re-filing in a more convenient foreign forum." *Capital Currency Exchange, N.V. v. National Westminster Bank PLC*, 155 F.3d 603, 607 (2d Cir. 1998)(emphasis in original).

"Once the court has identified an alternative forum, it must proceed to balance public and private interests to determine whether the convenience of the parties and the ends of justice would best be served by dismissing the action." *Murray*, supra, at 293. Although the doctrine of *forum non conveniens* is very flexible, *Piper*, supra, 454 U.S. at 249-250, no one factor will be decisive. *Id*. The U.S. Supreme Court has described the balancing of relevant private interests and public interests as follows:

> "An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [*sic*] of a judgment if one is obtained. . .
>
> Factors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

*American Dredging*, supra, 510 U.S. at 448-449 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) *overruled on other grounds by statute*); *see also Murray*, supra, at 293 (public interest factors) and at 294 (private interest factors); *Pollux Holding Ltd. v. The Chase Manhattan Bank*, 329 F.3d 64, 75-76 (2d Cir. 2003); *Blanco v. Banco Industrial de Venezuela*, 997 F.2d 974, 980 (2d Cir. 1993); *Scottish Air*, supra, at 1227.

5

In this case, as shown below, all parties in interest are amenable to process in the Dominican Republic, and both the private interest factors and the public interest factors strongly favor the dismissal of this case based on the doctrine of *forum non conveniens*.

## II.    The Dominican Republic Provides An Alternative Forum For This Case and All Parties With a Claim to the Stake Are Amenable to Process in the Alternative Forum

In this case, all the remaining parties with a claim to the Stake—including Plaintiff—are Dominican Republic companies that are amenable to service in the Dominican Republic. Levis is merely the stakeholder in this interpleader action and has no claim to the Stake. Indeed, in its Answer, Levis expressly recognized its debt to Interamericana (*see* Exhibit 2 to Notice of Motion— Levis' Answer, ¶ 1). Moreover, Levis has voluntarily deposited the Stake into the Court's care (*see* Exhibit A hereto, docket sheet entry for 8/28/2007), has expressly disavowed any interest in the Stake (Exhibit 2 to Notice of Motion: Levis' Third Party Complaint, ¶ 22), and has asked this Court to discharge it from all liability (*Id.*, "Wherefore" ¶ 3).[3]

Just one third party defendant is not a Dominican Republic company—Tag-It Pacific, Inc. ("Tag-It"). However, Tag-It has been dismissed from the case, with prejudice, by stipulation with Levis—a stipulation that was "So Ordered" by this Court on October 1, 2007 (*see* Exhibit B hereto).[4] Once a party is dismissed from an action, "that party is no longer a defendant before that court." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998). The Court is to consider whether "all the defendants *remaining in the action*" are amenable to service. *Moore's*

---

[3]    In any event, in its Third Party Complaint, Levis expressly recognized that the Dominican Embargoes it received from various third party defendants (including QST) may expose it to liability to those third party defendants (Exhibit 2 to Notice of Motion: Levis' Third Party Complaint, ¶¶ 17, 18), thereby recognizing that it is subject to Dominican Republic jurisdiction.

[4]    Exhibits A and B hereto are for convenience only, as they are copies of documents in the court record.

*Federal Practice*, § 111.74[2][f] (2007)(emphasis added).  If the court had to consider all defendants in a *forum non conveniens* inquiry, including those that have been dismissed, "a plaintiff could craftily preemptively defeat any such potential motion" by simply including a U.S. defendant regardless of the likelihood that said defendant would be easily dismissed from the case. *PT United Can*, supra, at 74.

Because all parties with a claim to the Stake are amenable to service in the Dominican Republic, the adequate forum inquiry continues only to determine whether, in the Dominican Republic forum, there is "a complete absence of due process and an inability of a plaintiff to obtain substantial justice." *Corporacion Tim*, supra, at 532.  This Court has expressly "rejected the contention that the Dominican Republic is an inadequate forum . . ." *Id.*; *see also Castillo v. Shipping Corp. of India*, 606 F.Supp. 497 (S.D.N.Y. 1985)(dismissing case under *forum non conveniens* in favor of the Dominican Republic as an alternative forum).  Accordingly, the Dominican Republic provides an alternative—and more appropriate—forum for this matter.

**III.    The Private Interest Factors Clearly and Unambiguously Favor the Dominican Republic as the Appropriate Forum for this Case**

Relevant private interests are to be considered in order to determine in which forum the trial of this action will be most "easy, expeditious, and inexpensive." *Bybee v. Oper der Standt Bonn*, 899 F.Supp. 1217, 1223 (S.D.N.Y. 1995).  In this case, the bulk of the documentary and testimonial evidence will be found in the Dominican Republic because:  (1) all parties in interest are Dominican Republic companies; (2) each of these party's claims to the Stake originate in the Dominican Republic; and (3) the underlying loan to Interamericana forming the basis of Plaintiff's claim also originates in the Dominican Republic.  Because the relevant events occurred in the

7

Dominican Republic, this court's analysis of the private interests in *Corporacion Tim* is especially instructive:

> "Insofar as there events occurred in the Dominican Republic, access to the necessary witnesses whose live or deposition testimony would be necessary, and any related documentary evidence, are likely to be located primarily in the Dominican Republic, and thus beyond the reach of this Court's power to compel production. The costs and inconvenience to those witnesses of participation at trial in this District, even if voluntary, would be substantially higher relative to comparable costs they would incur in the Dominican Republic. In all probability, these circumstance (sic) would cause not only financial hardships, but significant delays in preparing the case for trial before this Court."

*Corporacion Tim,* supra, at 534-535.

In this case, as in *Corporacion Tim*, the "availability to sources of proof" factor strongly favors the Dominican Republic as the proper forum. This is also true of the private interest factors concerning the availability of witnesses.[5] The "all other practical problems" language also favors trial in the Dominican Republic—most notably, the costly and time-consuming certified translation of nearly all relevant documents that will be required if the case moves forward in this forum will add significantly to the monetary and temporal costs for all parties, as well as the Court. "This factor militates strongly in favor of [the alternative venue] as a more appropriate forum for this litigation." *Blanco*, supra, at 982; *see also Aguinda*, supra, at 479 (discussing "onerous" translation difficulties as an important factor in the *forum non conveniens* analysis). Indeed, not one of the

---

[5] QST is not required on this motion to identify anticipated witnesses in the Dominican Republic. The "Second Circuit has expressly rejected such a requirement." *Piper*, supra, 454 U.S. at 258, fn26 (citing *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451, n3 (2d Cir. 1975)). "Such detail is not necessary" and QST moves for this dismissal "precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview. Requiring extensive investigation would defeat the purpose of [its] motion." *Id*. 454 U.S. at 258.

private interest factors set forth by the Supreme Court favors a decision by this Court to retain jurisdiction of the matter and the case should be dismissed accordingly.[6]

Moreover, litigation directly related to this matter is ongoing in the Dominican Republic. On October 4, 2007, QST won a judgment in its favor—from the Second Court of the Civil and Commercial Chamber of the First Instance in the Legal District of Santiago—against Interamericana in the amount of $931,496.64 (U.S. dollars)(the "Dominican Judgment")(Exhibit C hereto, certified English translation of the Dominican Judgment). Interamericana is now a defunct company that is currently in the process of liquidating its assets in favor of Banco Popular—Plaintiff in this case. Nevertheless, through the same Dominican Republic attorneys that represent Banco Popular, Interamericana has appealed the Dominican Judgment in QST's favor (Exhibit D hereto, Interamericana's Appeal, dated October 24, 2007—in Spanish). In addition to the fact that the private interest factors all favor dismissal of the action under *forum non conveniens*, the related litigation in the Dominican Republic further dictates dismissal in the interests of judicial economy and efficiency.

## IV.    The Public Interest Factors Clearly and Unambiguously Favor the Dominican Republic as the Appropriate Forum for this Case

There is no public interest reason for this Court to retain jurisdiction in the Southern District of New York. To the contrary, there is a strong public interest that a Dominican Republic Court decide this controversy as there is always "a local interest in having localized controversies decided at home," *American Dredging*, supra, 510 U.S. at 448. Moreover, the instant forum has such a

---

[6] This case does not involve a viewing of the premises and this factor does not come into play. To the extent the Court may require any such viewing, all relevant premises (e.g., textile manufacturing facilities, Plaintiff's banking facility), like all other relevant evidence, are located in the Dominican Republic.

minimal (if any) relationship to the litigation that it would be unnecessarily burdensome to impose jury duty upon its residents. *Id*.; *See also Pollux*, supra, at 76. Also, because the persons and entities whose affairs are most touched by this case reside in the Dominican Republic, "there is reason for holding the trial in their view and reach." *American Dredging*, supra, 510 U.S. at 448. Finally, as discussed in more detail in section V.(D), below, it is appropriate to try this case in the Dominican Republic—the forum "that is at home with the state law that must govern the case." *Id*. at 448-449. Thus, as with the private interest factors, all of the relevant *American Dredging* public interest factors heavily favor the Dominican Republic as the appropriate forum in which this matter should be tried.

In short, the Dominican Republic provides an adequate alternative forum and all of the public and private interest factors, *without exception*, weigh heavily in favor of the Dominican Republic as the appropriate forum for this case in lieu of the instant forum. Accordingly, this Court should dismiss this case under *forum non conveniens*.

## V.    Other Factors Also Weigh In Favor of the Dominican Republic as the Appropriate Venue For This Case

### (A)    There Should Be No Deference to Plaintiff's Choice of Forum

"There is ordinarily a strong presumption in favor of the plaintiff's choice of forum. Where a foreign plaintiff is concerned, however, its choice of forum is entitled to less deference." *Murray*, supra, at 290 (citing *Piper*, supra, 454 U.S. at 256); *Capital Currency Exchange, N.V. v. National Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998). This is because when a plaintiff chooses its own home forum, "it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice

deserves less deference." *Piper*, supra, 454 U.S. at 256. As a Second Circuit has noted, when a foreign plaintiff chooses a U.S. forum, "it is more likely that forum-shopping for a higher damage award or for some other litigation advantage was the motivation for plaintiff's selection." *Pollux Holding Ltd. v. The Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003); *see also Iragorri v. United Technologies Corporation*, 274 F.3d 65, 71 (2d Cir. 2001). "Because the real parties in interest are foreign corporations, there is not a strong presumption in favor of the plaintiffs' choice of forum." *Capital Currency*, supra, at 612.

Indeed, in this case, where Plaintiff is not only foreign but also a citizen and resident of the adequate alternative venue—the Dominican Republic—it seems quite likely that Plaintiff has chosen this particular forum "not because it is convenient, but solely in order to harass . . . or to take advantage of favorable law." *Piper*, supra, 454 U.S. at 249, fn15. Accordingly, Plaintiff's choice of the instant forum should be given no deference.

### (B)    Any Differences In Substantive Law Between Dominican Republic Law and the Law of this Forum Are to be Given Very Little Significance in the Analysis

To the extent there may be any differences between the substantive law of this forum and the substantive law of the Dominican Republic, such differences are to be given very little significance in a *forum non conveniens* inquiry. "The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Piper*, supra, 454 U.S. at 248; *Capital Currency*, supra, at 609. Because the central focus of the inquiry is convenience, "dismissal may not be barred solely because of the possibility of an unfavorable change in law. . . If substantial weight were given to the possibility of an unfavorable change in law . . . dismissal might be barred even where trial in the chosen forum was plainly inconvenient." *Piper*, supra, 454 U.S. at 249. A *forum non conveniens* "dismissal is not trumped

simply because the foreign forum will apply different substantive law than an American court."

*Capital Currency*, supra, at 609-610.   Nor does the adequacy of an adequate alternative forum

"'depend on the existence of an identical cause of action in the other forum.'" *Id*. at 610 (quoting

*PT United Can*, supra, at 74).   Furthermore, a Court should not be required to undertake a thorough

choice-of-law analysis as part of a *forum non conveniens* inquiry.

> "In fact, if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless. Jurisdiction and venue requirements are often easily satisfied.   As a result, many plaintiffs are able to choose from among several forums.   Ordinarily, these plaintiffs will select that forum whose choice-of-law rules are most advantageous. Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper."
>
> \*    \*    \*
>
> "If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of *forum non conveniens* would become quite difficult.   Choice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions . . .   The doctrine of *forum non conveniens*, however, is designed in part to help courts avoid conducting complex exercises in comparative law."

*Piper*, supra, 454 U.S. at 250-251.

Therefore, the fact that Dominican Republic law may be less favorable to Plaintiff is to be

given little if any significance in the *forum non conveniens* inquiry.

### (C)    Any Difference In Procedural Law Between Dominican Republic Law and the Law of this Forum Is to be Given Very Little Significance in the Analysis

"[P]rocedural differences between forums do not bar a *forum non conveniens* dismissal in

the absence of a complete denial of due process." *Broadcasting Rights International Corp. v.

Societe Tour de France, S.A.R.L.*, 708 F.Supp. 83, 85 (S.D.N.Y. 1989).   "[T]he Second Circuit, in

12

the *forum non conveniens* context, is apparently prepared to accept procedural differences in the law of the proposed transferee forum, so long as those differences do not rise to the level of a complete denial of due process." *Brazilian Investment Advisory Services, LTDA v. United Merchants & Mfg., Inc.*, 667 F.Supp. 136, 139 (S.D.N.Y.1987)(citing *Panama Processes, S.A. v. Cities Service Co.*, 500 F.Supp. 787, 800 (S.D.N.Y. 1980), *aff'med*, 650 F.2d 408 (2d Cir. 1981)). "[S]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Borden, Inc. v. Meiji Milk Products Co. Ltd.*, 919 F.2d 822, 828 (2d Cir. 1990); *Scottish Air*, supra, at 1234. Although an alternative forum's judicial procedures "may be less streamlined than ours, that does not make [the alternative forum's] procedures ineffective or render [the alternative forum] inadequate as an alternative forum." *Aguinda*, supra, at 478; *see also Blanco*, supra, at 982.[7]

In this case, the matter may be brought in the courts of the Dominican Republic without threat of any absence of due process. The Dominican Republic's "embargo" procedure serves the same function as this Court's interpleader procedure inasmuch as it permits—indeed requires—the

---

[7]    For example, the possibility that Plaintiff (or any party) may face some delay having the stakeholders claims adjudicated is of no consequence to the *forum non conveniens* inquiry. "Delays in an alternative forum's judicial system are not sufficiently harmful of due process to prevent dismissal on the ground of *forum non conveniens*. No authority has been cited that the speed with which a foreign forum will act on a claim for relief has ever factored into the conditions relevant to a *forum non conveniens* dismissal." *Broadcasting Rights*, supra, at 85-86. In any event, the interested parties should suffer no significant delay by the dismissal sought herein, as there is "no indication that courts in the Dominican Republic are any more congested than the busy courts in this District [the Southern District of New York]." *Corporacion Tim*, supra, at 535.

stakeholder to set aside and retain the disputed funds until the court determines to whom said funds must be disbursed.[8]

### (D)   The Likely Application of Dominican Republic Law to the Case Strongly Favors the Dominican Republic as the Appropriate Forum

"When deciding a *forum non conveniens* motion, a court may properly rely on the difficulties attending the resolution of questions of foreign law." *Scottish Air*, supra, at 1234.   A district court is entitled to conclude that questions of the alternative forum's "substantive and procedural law are better addressed by [the alternative forum's] courts." *Blanco*, supra, at 983. "[A]n action should be tried in a forum familiar with the law governing the case." *Corporacion Tim*, supra, at 536.

The locus of the events underpinning this litigation is the Dominican Republic.  The various contractual relationships involved are almost all entirely between Dominican Republic companies. This matter involves a dispute between corporate citizens of the Dominican Republic over access to limited funds owed to Interamericana, a defaulting Dominican Republic borrower, by a disinterested stakeholder, and most if not all of the competing claims are premised upon contractual relationships formed in the Dominican Republic by Dominican Republic contracts.   Without exhaustively analyzing the conflict-of-law issue, this case will likely be governed by Dominican Republic law because the Dominican Republic "has the most significant contacts with the matter in dispute." *Scottish Air*, supra, at 1234; *see also Bybee*, supra, at 1223.  Like the facts in *Murray*,

---

[8]  Under Dominican Republic law, an "embargo" of funds requires the holder of the funds to retain same until the proper legal disposition of the funds is determined by a court.  In fact, this procedure is akin to our own interpleader procedure inasmuch as it requires a stakeholder to set aside the disputed funds to the credit of the action until a court determines to whom the funds must be disbursed.  This achieves largely the same goal as our own interpleader procedure.

14

"[t]he United States thus has virtually no interest in resolving the truly disputed issues." *Murray*, supra, at 293. Although this Court is able to apply Dominican Republic law when necessary, it cannot do so as knowledgeably or as efficiently as a Dominican Republic tribunal. *See Bybee*, supra, at 1223. This factor, along with all other relevant factors, strongly favors dismissal of this action for *forum non conveniens* and in favor of the alternative forum provided by the courts of the Dominican Republic.

## CONCLUSION

For the foregoing reasons, QST Dominicana LLC respectfully requests an Order from this Court dismissing the action under the doctrine of *forum non conveniens*.

Dated: New York, New York
      October 24, 2007

Respectfully submitted,

**VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.**

By: _____
     Charles Caranicas (CC 9244)

1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700

Michael M. Eidelman, Esq.
Randall M. Lending, Esq.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

Attorneys for Third Party Defendant
*QST Dominicana LLC*

15