## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

BANCO POPULAR DOMINICANO, C. POR A.,　　　　　　:   **[ELECTRONICALLY FILED]**

                    Plaintiff,　　　　　:   CIVIL ACTION NO. 07-6443

                               :   (LTS)(THK)

    vs.　　　　　　　　　　　　　　: 

                               : 

LEVI STRAUSS & CO.,　　　　　　　　　: 

                               : 

                    Defendant and　　　　: 

                    Third Party Plaintiff,　: 

                               : 

    vs.　　　　　　　　　　　　　　: 

                               : 

INTERAMERICANA APPAREL COMPANY, INC;　　: 

INTERAMERICANA PRODUCTS INTERNATIONAL, S.A.; : 

QST DOMINICANA LLC; US PAPER & CHEMICAL;　: 

APPAREL MACHINERY & SUPPLY CO.; YKK SNAP　: 

FASTENERS AMERICA, INC.; SOUTHERN TEXTILE　: 

DOMINICANA, INC.; INDUSTRIA CARTONERA　　: 

DOMINICANA, S.A. (SMURFIT); THE GRAPHIC LABEL : 

GROUP DOMINICANA, INC.; AND TAG-IT PACIFIC, : 

INC.,　　　　　　　　　　　　　　　: 

                               : 

                    Third Party Defendants.   x

------------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN
## <u>OPPOSITION TO FORUM NON CONVENIENS MOTION</u>

**HERRICK, FEINSTEIN LLP**
Andrew Gold
John August
Mary Ellen Shuttleworth
*Attorneys for Plaintiff*
2 Park Avenue
New York, New York 10016
(212) 592-1469

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT .............................................................................1

BACKGROUND AND FACTS ...............................................................................4

    A  The Security Agreement is Governed by New York Law
    and Contains a Forum Selection Clause Indicating
    New York as the Chosen Forum...................................................................5

    B. QST is a U.S. Company, Incorporated in Delaware, with
    Strong Ties to New York .............................................................................6

ARGUMENT

*FORUM NON CONVENIENS* DISMISSAL SHOULD NOT BE GRANTED .................7

POINT I

BPD'S CHOICE OF FORUM IS ENTITLED TO DEFERENCE
BECAUSE IT WAS CHOSEN FOR BONA FIDE REASONS
THAT THE LAW RECOGNIZES AS VALID.................................................................9

POINT II

QST HAS NOT ESTABLISHED THAT THE DOMINICAN REPUBLIC
IS AN ADEQUATE ALTERNATIVE FORUM BECAUSE ALL THE PARTIES
MAY NOT BE SUBJECT TO ITS JURISDICTION.......................................................10

POINT III

THE PRIVATE INTERESTS OF THE PARTIES FAVOR NEW YORK.......................11

    A.  The Sources of Proof Are Easily Accessible in New York ............................12

    B.  No Witnesses or Depositions are Necessary in this Case .................................13

    C.  QST is Part of a "Global" Corporation Based in the
    United States and is Adequately Represented in this Forum...........................14

POINT IV

THE PUBLIC INTEREST CONSIDERATIONS FAVOR NEW YORK........................14

CONCLUSION..................................................................................................18

i

## TABLE OF AUTHORITIES

Allied Bank Int'l v. Banco Credito Agricola de Cartago,
    757 F.2d 516, 521-22 (2d Cir. 1985) ...................................................................15

In Re Anglo Am. Ins. Group, P.L.C. v. Calfed Inc.,
    940 F. Supp. 554, 564 (S.D.N.Y. 1996).............................................................13

Assicurazioni Generali S.p.A. Holocaust Ins. Litig.,
    228 F. Supp. 2d 348, 362 (S.D.N.Y. 2002)........................................................13

Calavo Growers of Cal. v. Generali Belgium,
    632 F.2d 963, 969 (2d Cir. 1980).................................................................13, 15

Concesionaria DHM, S.A. v. International Fin. Corp.
    307 F. Supp. 2d 553, 563 (S.D.N.Y. 2004).......................................................9, 10

Credit Francais Int'l, S.A. v. Sociedad Financiera de Comercio, C.A.,
    128 Misc. 2d 564, 572, 490 N.Y.S.2d 670, 678 (Sup. Ct. N.Y. Co. 1985) ....9, 16

ESI, Inc. v. Costal Power Prod. Co.,
    995 F. Supp. 419, 426 (S.D.N.Y. 1998)...............................................................10

Gulf Oil Co. v. Gilbert,
    330 U.S. 501, 508, 67 S. Ct. 839, 843,
    91 L. Ed. 1055, 1062 (1947)).......................................................... 7-8, 11,15

I.T. Consultants, Inc. v. Islamic Republic of Pakistan,
    Civ. Action No. 01-0241, 2003 U.S. Dist. LEXIS 23500, at *24
    (D.D.C. Feb. 11, 2003) (Friedman, J.), aff'd in part, 351 F.3d 1184
    (D.C. Cir. 2003) ...........................................................................................8

Irragorri v. United Techs. Corps., 274 F.3d 65, 73 (2d Cir. 2001) ...............................8, 9

Koster v. (American) Lumberman's Mut. Cas. Co.,
    330 U.S. 518, 524, 67 S. Ct. 828, 831-32, 91 L. Ed. 1067, 1074 (1947) .............8

Lacey v. Cessna Aircraft Co.,
    862 F.2d 38, 43 (3d Cir. 1988).............................................................................8

Mercier v. Sheraton Int'l Inc.,
    981 F.2d 1345, 1351 (1st Cir. 1992) ....................................................................8

Nationsbank of Fla. v. Banco Exterior de Espana,
        867 F. Supp. 167 (S.D.N.Y. 1994) ...............................................................12, 13

Piper Aircraft Co. v. Reyno,
        454 U.S. 235, 241, 102 S. Ct. 252, 258, 70 L. Ed. 2d 419, 426 (1981)..........7, 15

PT United Can Co. v. Crown Cork & Seal Co.,
        138 F.3d 65, 73 (2d. Cir 1998)............................................................................10

Sokol Holdings, Inc. v. BMB Munai, Inc.,
        No. 05 Civ 3749 (kmw), 2007 U.S. Dist. LEXIS 43817
        (S.D.N.Y. June 14, 2007) (citing Irragorri) .........................................................8

Wiwa v. Royal Dominican Petroleum Co.,
        226 F.3d 88, 100 (2d Cir. 2000)..................................................................7, 8, 14

Plaintiff Banco Popular Dominicano, C. Por A. ("BPD"), by its attorneys, Herrick, Feinstein LLP, respectfully submits this memorandum of law in opposition to QST Dominicana LLC's ("QST") motion to dismiss for *forum non conveniens*. QST's entire motion is based on the "fact" that it is a Dominican Republic company and, thus, it is inconvenient to litigate in New York. QST repeats this "fact" several times in its motion papers. (See QST's MOL at 3, stating that, "All parties with a real interest in the Stake are Dominican Republic corporations"; and at 7, stating that "all parties in interest are Dominican Republic companies.") This is a blatant misrepresentation. QST is a United States company, formed in Delaware, and is part of a U.S. parent with offices in New York! Notwithstanding all of the other factors which favor retaining this action in New York, this one fact belies QST's entire inconvenience argument and justifies denial of its motion.

## PRELIMINARY STATEMENT

QST, an unsecured creditor, brings the instant motion to dismiss this action for *forum non conveniens*, arguing that the Dominican Republic is the most appropriate forum for this case. As set forth in detail herein, QST's motion should be denied because all of the factors courts consider on such a motion favor retaining this action in New York.

Most significantly, QST's argument that it will be inconvenienced by litigating in New York is hogwash. The premise of QST's entire argument is that it, and the other parties with a claim to a receivable due from Levi Strauss & Co. ("LS&CO"), are Dominican Republic companies. This is either an unimaginably glaring oversight or a sanctionable attempt to mislead the Court because QST is a United States company! QST was formed in Delaware in 1999, not the Dominican Republic. QST is a wholly owned subsidiary of QST Industries, Inc., with offices in New York at 15 West 36th Street, New York, NY 10018.

According to its website, QST's parent company, QST Industries, Inc. ("QST Industries") is a "global" company, with operations in 32 countries around the world and headquartered in Chicago, Illinois.  (A copy of a printout of QST Industries website is annexed to the Shuttleworth Aff. (defined below) as Exhibit "D.")  QST Industries has 18 North American Offices and Representatives, including one at 15 West 36th Street, New York, NY 10018.  This website lists QST Dominicana LLC as QST Industries' office in the Dominican Republic.  The website explains that "As activity increased in the Caribbean and Central America, QST responded by establishing QST Dominicana LLC with manufacturing and warehouse facilities in the Dominican Republic."  The primary counsel representing QST is Vedder Price, a law firm with more than 240 lawyers and offices in New York, Chicago, Washington, D.C. and New Jersey.  These facts alone -- that QST is a U.S. company that is operated as one office of QST Industries, which also has offices in New York and New York counsel -- justify denial of QST's motion, notwithstanding all of the other factors which favor retaining this action in New York.

New York is the proper forum because BPD's security interest arises out of a Security Agreement (defined below) that is written in English; was negotiated and drafted by counsel in New York City; is dominated in U.S. Dollars -- not Pesos (the currency of the Dominican Republic); unequivocally states that it is governed by New York law; and contains a forum selection clause naming New York as the chosen forum.  The underlying loan documents provide that payment on the loan is to be made by wire transfer to BPD Bank in New York.  Furthermore, LS&CO is doing business in New York and is subject to jurisdiction in New York.  For these reasons, BPD's choice of a New York forum is entitled to substantial deference.

QST's motion should also be denied because it has not established that the Dominican Republic is an adequate alternative forum. QST has failed to establish that all the parties are subject to jurisdiction in the Dominican Republic.

A balancing of the private interests of the parties and the public interest favors retaining this case in New York. This is a document case and the relevant documents are already available in New York and are already in English. The relevant documents that will be proffered by BPD are the Security Agreement and the UCC Financing Statements (defined below); these documents are in English and are already in New York. The documents that will be relevant for QST are its Dominican Republic judgment and the embargo notice -- each of which post-date the Security Agreement and UCC Financing Statements. These two documents are already in New York. QST's judgment is already in English. Likely, no witnesses will be necessary.

A balancing of the public interest also favors retaining this case in New York. This case is a straightforward priority dispute that will most likely be disposed of on a motion for summary judgment without the necessity of a jury. This case presents matters of local interest in New York, i.e., the enforceability of a security agreement governed by New York law. New York is the financial capital of the world and its courts have a broad interest in protecting creditors that are entitled to payment under New York law, under contracts subject to New York law and that designate New York as the forum for disputes. The Dominican Republic law providing that BPD's properly filed priority interest is enforceable in the Dominican Republic will be provided to the Court at the appropriate time.

This case also presents an important issue of international finance that is most appropriately decided in New York. Because the Dominican Republic does not have a system for recording security interests in nonpossessory personal property, if BPD's security interest

perfected in the U.S. is not enforceable in the Dominican Republic then the result is that it is impossible for lenders to obtain a perfected security interest in nonpossessory personal property, like accounts receivable, in the Dominican Republic. Such a result would likely be the death knell for commercial banking in the Dominican Republic. As the center of world banking, trade and finance, New York should extend itself to treat with such controversies.

The truth is that, if Dominican Republic law permitted judgment creditors like QST to prime previously filed security interests (which it does not), that law could easily be presented to this Court.

For the reasons set forth herein, QST's motion to dismiss for *forum non conveniens* should be denied in its entirety.

## BACKGROUND AND FACTS

The facts are set forth in the Complaint which is annexed to the Affidavit of Mary Ellen Shuttleworth, sworn to December 10, 2007, ("Shuttleworth Aff.") as Exhibit "A," and are incorporated as if set forth fully herein.

Stated briefly, BPD commenced this action to enforce its first priority security interest in approximately $2,700,000 due from LS&CO to BPD's borrowers, Interbojos, Ltd.; Interamericana Apparel Company, Inc. ("IAC"); Interamericana Products International (Panama), S.A. ("IPI"); J.B.S., S.A.; Juan Bojos, C. por A.; Bojos Leather, Ltd.; and Bojos Manufacturing Ltd., (collectively, the "Borrowers"), for fabric and partially finished goods purchased by LS&CO from IAC and IPI. (The amount due from LS&CO is referred to as the "Receivable.")

BPD's right to the Receivable arises from a loan made on or about December 22, 2005, by BPD individually and as bank agent, collateral agent and/or administrative agent for

certain financial institutions to Borrowers (the "Loan"). (Id., ¶ 7.) As security for repayment of the Loan, the Borrowers granted BPD a security interest in certain of their assets, including, *inter alia*, all of their accounts receivable, pursuant to a certain security agreement (the "Security Agreement," and, together with the other loan documents, the "Loan Documents"). (Id., ¶ 8.)

BPD duly perfected its first priority security interest pursuant to Uniform Commercial Code ("UCC") section 9-307(c) by filing UCC Financing Statements ("UCC Financing Statements") against each of the Borrowers with the District of Columbia Recorder of Deeds on or about February 10, 2006. (Id., ¶ 9.) Perfection by filing in Washington D.C. was proper because the Dominican Republic does not have a system for recording nonposessory personal property security interests.

LS&CO does not dispute that it owes money and has paid over $2 million into the Court by way of an action in interpleader. The action in interpleader names additional third-party defendants in order to address a purported dispute over the priority of BPD's security interest. The third-party defendants claim to hold judgments on unsecured claims allegedly giving them interests in the Receivable, and have purportedly served embargo notices (akin to garnishments) upon LS&CO. Whatever their interests, they are not entitled to priority over BPD's properly perfected and previously filed security interest. The issues for the Court to determine are: (1) whether BPD has properly perfected its security interest under the UCC and (2) whether BPD's secured claim is entitled to priority over the unsecured claims of the third-party defendants.

## A. The Security Agreement is Governed by New York Law and Contains a Forum Selection Clause Indicating New York as the Chosen Forum

The Security Agreement that BPD seeks to enforce in this action is governed by New York law. Specifically, Section 16 of the Security Agreement provides:

Section 16.    GOVERNING LAW

THIS SECURITY AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(Security Agreement at 17; A copy of the Security Agreement is annexed to the Shuttleworth Aff. as Exhibit "B.")

The Security Agreement also contains a forum selection clause indicating that New York is the chosen forum:

Section 19.    Jurisdiction; Consent to Service of Process

(a) Each party hereto hereby irrevocably and unconditionally submits, for itself and it property, to the nonexclusive jurisdiction of any New York State court or federal court of the United States of America sitting in the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Security Agreement or the other Loan Documents, or for the recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that, to the extent permitted by applicable law, all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted under applicable law, in such federal court. ...

(Security Agreement at 17.)

## B. QST is a U.S. Company, Incorporated in Delaware, with Strong Ties to New York

QST -- that is, QST Dominicana LLC -- is a limited liability company that was formed on September 20, 1999 in Delaware.  (A copy of a printout from the State of Delaware Division of Corporations is annexed to the Shuttleworth Aff. as Exhibit "C.")  QST is not a Dominican Republic company.  Indeed, the embargo notice that QST served upon LS&CO provides that QST is a U.S. company.

QST's parent company, QST Industries, as it describes itself on its website, is a "global" company, active in 32 countries around the world and headquartered in Chicago,

Illinois. (A copy of a printout of QST Industries website is annexed to the Shuttleworth Aff. as Exhibit "D.") According to its website, QST Industries has 18 North American Offices and Representatives, including one at <u>15 West 36th Street, New York, NY 10018</u>. The website describes QST Industries' global reach and development in the Dominican Republic on:

> **Going Global...**
>
> The 1980s saw QST go "global" with our "Global Sourcing & Distribution Program" in response to the encouragement of our long-time customers who needed a more efficient supply chain.
>
> As activity increased in the Caribbean and Central America, QST responded by establishing QST Dominicana LLC with manufacturing and warehouse facilities in the Domincan Republic.
>
>       \*          \*          \*          \*
>
> **The New Millennium...**
>
> Today, QST has operations in more than 32 countries worldwide. <u>QST continues to live up to our dedication to being "everywhere apparel is manufactured"</u>.
>
>       \*          \*          \*          \*
>
> As QST enters the new millennium, we are uniquely positioned to serve the apparel industry on a global basis.

http://www.qst.com/about.html (underscore added). The primary counsel representing QST is Vedder Price, a law firm with more than 240 lawyers and offices in New York, Chicago, Washington, D.C. and New Jersey.

## <u>ARGUMENT</u>

### <u>***FORUM NON CONVENIENS*** DISMISSAL SHOULD NOT BE GRANTED</u>

*Forum non conveniens* is a discretionary device permitting a court in ***rare*** instances to dismiss a claim even though the court is a permissible venue. <u>Wiwa v. Royal Dominican Petroleum Co.</u>, 226 F.3d 88, 100 (2d Cir. 2000). *Forum non conveniens* dismissal is rare because it is well settled that a plaintiff's choice of forum is given significant weight and should rarely be disturbed. <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241, 102 S. Ct. 252, 258, 70 L. Ed. 2d 419, 426 (1981) (citing <u>Gulf Oil Co. v. Gilbert</u>, 330 U.S. 501, 508, 67 S. Ct. 839,

843, 91 L. Ed. 1055, 1062 (1947)); Koster v. (American) Lumberman's Mut. Cas. Co., 330 U.S.

518, 524, 67 S. Ct. 828, 831-32, 91 L. Ed. 1067, 1074 (1947); Wiwa, 226 F.3d at 100; Lacey v.

Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988). "[A] plaintiff's choice of forum is entitled

to substantial deference and should only be disturbed if the factors favoring the alternative forum

are compelling." Wiwa, 226 F.3d at 101. Defendant bears the burden of persuasion as to all

elements of a *forum non conveniens* analysis. I.T. Consultants, Inc. v. Islamic Republic of

Pakistan, Civ. Action No. 01-0241, 2003 U.S. Dist. LEXIS 23500, at *24 (D.D.C. Feb. 11, 2003)

(Friedman, J.), aff'd in part, 351 F.3d 1184 (D.C. Cir. 2003); Mercier v. Sheraton Int'l Inc., 981

F.2d 1345, 1351 (1st Cir. 1992); Lacey, 862 F.2d at 43. In this case, QST has failed to meet its

burden.

The Second Circuit follows a three-part test in analyzing a motion to dismiss on

*forum non conveniens* grounds:

> First, courts determine the degree of deference due to the plaintiff's choice of
> forum. Next, courts examine whether an adequate alterative forum may hear the
> dispute. Finally, courts weigh the competing private interests of the parties in the
> choice of forum, and the public interests of the alternative fora under
> consideration. The action should be dismissed 'only if the chosen forum is shown
> to be genuinely inconvenient and the selected forum significantly preferable.'

Irragorri v. United Techs. Corps., 274 F.3d 65, 73 (2d Cir. 2001); Sokol Holdings, Inc. v. BMB

Munai, Inc., No. 05 Civ. 3749 (kmw), 2007 U.S. Dist. LEXIS 43817 (S.D.N.Y. June 14, 2007)

(citing Irragorri). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's

choice of forum should rarely be disturbed." Gilbert, 330 U.S. at 508.

As set forth in detail herein, the Southern District of New York is not "genuinely

inconvenient" for QST, a U.S. company, nor is the Dominican Republic a "significantly

preferable" forum to the Southern District of New York.

8

**POINT I**

**BPD'S CHOICE OF FORUM IS ENTITLED TO DEFERENCE BECAUSE IT WAS CHOSEN FOR BONA FIDE REASONS THAT THE LAW RECOGNIZES AS VALID**

"The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." Irragorri, 274 F.3d at 71-72. Here, BPD chose the Southern District of New York as the forum in which to bring this action pursuant to the choice of law and forum selection clauses in the Security Agreement.

When the Loan Documents were prepared in this matter, BPD did its best to ensure that any litigation related to the Loan would occur in New York, the center of world trade, banking and finance. See Credit Francais Int'l, S.A. v. Sociedad Financiera de Comercio, C.A., 128 Misc. 2d 564, 572, 490 N.Y.S.2d 670, 678 (Sup. Ct. N.Y. Co. 1985) (recognizing New York as the center of world trade banking and finance). The Security Agreement is written in English; was negotiated and drafted by counsel in New York City; is dominated in U.S. Dollars -- not Pesos (the currency of the Dominican Republic); unequivocally states that it is governed by New York law; and contains a forum selection clause naming New York as the chosen forum.[1] The underlying loan documents provide that payment on the loan is to be made by wire transfer to BPD Bank in New York.

A forum selection clause is a valid reason for choosing a New York forum that is entitled to deference. In Concesionaria DHM, S.A. v. International Fin. Corp., the Court found that an Ecuadorian plaintiff's choice of New York pursuant to a forum selection clause was *bona*

---

[1] The basis of QST's *forum non conveniens* motion is the incorrect assumption that the Security Agreement is governed by Dominican Republic law. QST mistakenly alleges that "the underlying loan from BPD on which Interamericana has defaulted ... is likely governed by Dominican Republic law." (QST's MOL at 3.) QST is wrong; the Security Agreement is governed by New York law.

*fide* and denied the defendant's motion to dismiss for *forum non conveniens*. 307 F. Supp. 2d

553, 563 (S.D.N.Y. 2004). The Court explained that:

> The forum selection clause, however, must be considered evidence that DHM's
> venue selection has a *bona fide* connection to the loan agreements. The clause
> shows that plaintiff's choice of forum was not intended to burden the defendants
> or obtain some tactical advantage. ... It thus appears that the plaintiff's choice of
> forum was motivated largely by convenience, and the plaintiff's choice is thus
> entitled to deference.

Id.

Here, similar circumstances exist. The basis of this litigation is whether the

Security Agreement is enforceable, thus giving BPD a first priority interest in the Receivable.

BPD's forum selection has a *bona fide* connection to the Security Agreement since the Security

Agreement is governed by the New York law and contains a forum selection clause indicating

the Southern District of New York as the proper forum. This clause shows that BPD's choice of

forum was not intended to burden QST and the other defendants or obtain some tactical

advantage. Rather, it was motivated by valid reasons and is entitled to deference.[2]

## POINT II

### QST HAS NOT ESTABLISHED THAT THE DOMINICAN REPUBLIC IS AN ADEQUATE ALTERNATIVE FORUM BECAUSE ALL THE PARTIES MAY NOT BE SUBJECT TO ITS JURISDICTION

A forum is not adequate unless all defendants are subject to the alternative

jurisdiction. See Concesionaria DHM, 307 F. Supp. 2d at 563;  PT United Can Co. v. Crown

Cork & Seal Co., 138 F.3d 65, 73 (2d. Cir 1998) (explaining that to grant a motion to dismiss for

*forum non conveniens*, court must find "that the litigation may be conducted elsewhere against

all defendants"); ESI, Inc. v. Costal Power Prod. Co., 995 F. Supp. 419, 426 (S.D.N.Y. 1998)

(stating that "the requirement that a defendant be subject to the jurisdiction of the alternative

---

[2]    BPD is not suggesting that QST is somehow bound by the forum selection clause. Rather, this clause is
evidence that BPD had valid reasons to commence this action in New York and, accordingly, BPD's choice of
forum is entitled to deference.

forum 'refers to all defendants'"). QST bears the burden of persuasion on this, and all other, elements of the *forum non conveniens* analysis.

QST has failed to establish that the Dominican Republic is an adequate alternative forum because it has not established that all the parties are subject to its jurisdiction. For example, QST has not established that LS&CO would be subject to the jurisdiction of the courts of the Dominican Republic. LS&CO is not a Dominican Republic corporation. LS&CO is a corporation organized and existing under the laws of Delaware with its principal place of business located at 1155 Battery Street, San Francisco, California, and is duly authorized to conduct business in the State of New York. (LS&CO Answer, ¶6.)[3] Other defendants also may not be subject to jurisdiction in the Dominican Republic. Thus, QST has not established that the Dominican Republic is an adequate alternative forum.

## POINT III

## THE PRIVATE INTERESTS OF THE PARTIES FAVOR NEW YORK

The private interest factors -- those relating to the convenience of the litigants -- were set out by the Supreme Court almost sixty years ago and remain the standard today:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Gilbert, 330 U.S. at 508.

---

[3]    QST makes the conclusory allegation in a footnote at page 6 of its brief that LS&CO has recognized that it is subject to the Dominican Republic based on paragraphs 17 and 18 of LS&CO's Answer. Paragraph 17 merely states that LS&CO received "Payment Embargoes." (LS&CO Answer, ¶ 17.) Paragraph 18 states that, "Under the laws of the Dominican Republic, LS&CO. is required to hold the embargoes funds or may otherwise expose itself to liability..." (Id., ¶ 18). This is not an admission that LS&CO is subject to the jurisdiction of the Dominican Republic.

**A.  The Sources of Proof Are Easily Accessible in New York**

This is a document case and the relevant documents are already available in New York and are already in English.  The relevant documents that will be proffered by BPD are the Security Agreement and the UCC Financing Statements; these documents are in English and are already in New York.  The documents that will be relevant for QST are its Dominican Republic judgment and the embargo notice -- each of which post-date the Security Agreement and UCC Financing Statements.  These two documents are already in New York.  QST's judgment is already in English.  Indeed, QST has already provided this Court with a certified English translation of the purported Dominican judgment.  (QST's MOL, Ex. C.)  At most QST will need to have its twelve (12) page payment embargo notice translated into English.  On the other hand, were this action transferred to the Dominican Republic, BPD would be required to have the Security Agreement, and seven UCC Financing Statements (one for each of the borrowers) translated into Spanish.

In Nationsbank of Fla. v. Banco Exterior de Espana, the Spanish defendant unsuccessfully made similar arguments to the arguments that QST makes in it *forum non conveniens* motion.  867 F. Supp. 167 (S.D.N.Y. 1994).  There, the Spanish defendant argued that all the relevant documents were located in Spain, not New York, and that it would be inconvenient to require it to present documentary evidence in New York.  The Southern District found in favor of the plaintiff's choice of forum even though some of the documents would require translation.  The Southern District determined:

> The main "proof" in this case involves the various documents, some of which are in Spanish...
>
> Significantly, most of the relevant documents are in English, and if the case were brought in Spain, these documents would have to be translated...

> Because the documents are accessible to both parties in the United States and most of the documents are in English, the balance of this factor weighs in favor of retaining the case in the United States.

Id. at 171-72.[4]

Moreover, in Nationsbank, because the Spanish defendant had both an office *and counsel* in New York, the Southern District found the argument that it would be inconvenient to present documentary evidence in New York unpersuasive. QST also has an office in New York, at 15 West 36th Street, New York, New York. Its counsel is Vedder Price, a law firm with more than 240 lawyers and offices in New York. Any argument that it would be inconvenient for Vedder Price to represent its client in New York on this matter involving New York commercial law is similarly unpersuasive.

## B. No Witnesses or Depositions are Necessary in this Case

On a *forum non conveniens* motion, attendance of witnesses is not a significant consideration where -- as here -- the evidence is mainly documentary. Nationsbank, 867 F. Supp. at 172. QST has not identified that any witnesses are necessary, let alone unwilling to travel to New York. In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig., 228 F. Supp. 2d 348, 362 (S.D.N.Y. 2002). Indeed, here, no witnesses are necessary. Moreover, where the relevance of witnesses is indeterminate, the burden on the defendant does not reach the requisite level of oppressiveness or vexatiousness to tip the balance in favor of defendant on a *forum non conveniens* motion. Anglo Am. Ins. Group, 940 F. Supp. at 564.

---

[4] Even if there were a significant amount of documents in the Dominican Republic, which there is not in this case, the relative ease of air travel between the Dominican Republic and New York leads to the conclusion that this is not a sufficient basis on which to conclude a forum is inconvenient. See Calavo Growers of Cal. v. Generali Belgium, 632 F.2d 963, 969 (2d Cir. 1980) (concurrence) (A forum is not inconvenient if accessible easily by air travel. "Jet travel and satellite communications have significantly altered the meaning of 'inconven.'"); Anglo Am. Ins. Group, P.L.C. v. Calfed Inc., 940 F. Supp. 554, 564 (S.D.N.Y. 1996) (documents are easily transported and the development of worldwide travel means that distance alone is not a sufficient basis on which to conclude a forum is inconvenient).

**C. QST is Part of a "Global" Corporation Based in the United States and is Adequately Represented in this Forum**

As set forth above, QST, a U.S. limited liability company formed in Delaware, is a wholly owned subsidiary of QST Industries, Inc., another U.S. corporation. QST Industries website provides that it is a "global" company, active in 32 countries around the world with 18 North American Offices, including its headquarters and a business location in New York City. This website provides that QST Dominicana LLC is the Dominican Republic office of QST Industries. QST's main counsel in this matter is Vedder Price, a law firm with more than 240 lawyers and offices in New York. Any argument that it is burdensome for a U.S. company, like QST, with offices and counsel in New York is unpersuasive.

Additionally, as a Delaware LLC, QST is an American citizen. See 28 U.S.C. § 1332 (c)(1) (providing that a corporation is a citizen of the State in which it is incorporated). The home forum of an American citizen for *forum non conveniens* purposes is any United States court. See Wiwa, 226 F.3d at 103. QST would have this Court believe that litigation in its home forum is somehow burdensome or vexatious. Such an argument is at best unpersuasive, and borders on the frivolous.

BPD has shown that it chose this forum for good reasons, and not to oppress or vex QST. And QST, which has the burden of persuasion, has not shown compelling private interests for changing the forum.

## POINT IV

## THE PUBLIC INTEREST CONSIDERATIONS FAVOR NEW YORK

The public interest factors that the Court should consider in determining the convenience of the forum include the administrative burdens, court congestion and jury duty associated with trying a case, the local interest in deciding a controversy and the avoidance of

problems in conflict of laws and in the application of foreign law. <u>Gilbert</u>, 330 U.S. at 509; <u>Piper</u>, 454 U.S. at 241. All of these factors favor retaining this case in New York. This case is a straight forward priority dispute involving the enforceability of a security agreement governed by New York law that will most likely be disposed of on a motion for summary judgment without the necessity of a jury. New York is a financial capital of the world and its courts have a broad interest in protecting creditors that are entitled to payment under New York law, under contracts subject to New York law and that designate New York as the forum for disputes. <u>Allied Bank Int'l v. Banco Credito Agricola de Cartago</u>, 757 F.2d 516, 521-22 (2d Cir. 1985). Although the New York courts are busy, the Second Circuit has noted that the temptation for a busy district to transfer cases must be resisted and the plaintiff's choice of forum respected. <u>Calavo</u>, 632 F.2d 963.

This case presents matters of local interest in New York. The basis of this litigation is whether the Security Agreement is enforceable, thus giving BPD a first priority interest in the Receivable. As QST argues in its brief, "'[A]n action should be tried in a forum familiar with the law governing the case.'" (QST's MOL at 14.) We agree. And the law governing the case is the New York UCC. The Dominican Republic law providing that BPD's properly filed priority interest is enforceable in the Dominican Republic will be provided to the Court at the appropriate time.

This case also presents an important issue of international finance that is appropriately decided in New York. In <u>Allied Bank Int'l</u>, the Second Circuit required New York law to be applied in order to protect New York's interest in "maintaining New York's status as one of the foremost commercial centers in the world":

> The United States has an interest in maintaining New York's status as one of the foremost commercial centers in the world. ... The United States has an interest in

> ensuring that creditors entitled to payment in the United States in United States dollars under contracts subject to the jurisdiction of United States courts may assume that, except under the most extraordinary circumstances, their rights will be determined in accordance with recognized principles of contract law.

757 F.2d at 521-22 (refusing to give effect to a Costa Rican decree forbidding Costa Rican banks to pay U.S. dollars to creditors).

New York State courts also recognize New York as a center of world banking, trade and finance and the courts' obligation to retain lawsuits where -- as here -- New York is the designated forum. Credit Francais Int'l, S.A., 128 Misc. 2d at 572, 490 N.Y.S.2d at 678.

> [P]ublic policy favors New York courts retaining lawsuits where New York is the designated forum. The center of world banking, trade, finance and other activities ... *must* extend itself to treat with such controversies. New York has had no aversion to dealing with multinational litigation before, even when there were minimal contacts with the State, when business or equitable considerations indicated that it should. "It is a financial capital of the world, serving as an international clearinghouse and market place for a plethora of international transactions ... In order to maintain its pre-eminent financial position, it is important that the justified expectations of the parties to the contract be protected." We have rejected provincialism.

Id. (emphasis supplied; citations omitted).

As the Court will recognize, if the Security Agreement is not enforceable in the Dominican Republic, the broad implication is that it will be impossible for lenders to obtain a perfected security interest in nonpossessory personal property like accounts receivable. The implications if it is not enforceable are enormous for international banking and could be a death knell for commercial banking in the Dominican Republic. Therefore, this Court's determination is crucial in order to protect commercial lenders making loans in the Dominican Republic.

On the other hand, QST argues that the Dominican Republic has a substantial interest in this litigation but provides no analysis. Rather than showing any legitimate interest in having its claim tried in the Dominican Republic, QST merely concludes, "[w]ithout

exhaustively analyzing the conflict-of-law issue, this case will likely be governed by Dominican Republic law because the Dominican Republic 'has the most significant contacts with the matter in dispute.'" (QST's MOL at 14.) As set forth above, this is simply not true. The truth is that, if Dominican Republic law permitted judgment creditors like QST to prime previously filed security interests (which it does not), that law could easily be presented to and interpreted by this Court.

Furthermore, the allegation in QST moving papers that there is related litigation ongoing in the Dominican Republic is also not accurate. (QST's MOL at 9.) QST commenced an action in the Dominican Republic to liquidate its claim against Interamericana. BPD was not named in, and had no notice of, this suit. This suit has presumably been concluded as QST argues before this Court that it has a judgment that forms the basis for its claim. This Court is now the appropriate forum to determine whether this alleged Dominican Republic judgment creditor can prime BPD's security interest filed pursuant to New York law. QST's further allegation that, "[T]hrough the same Dominican Republic attorneys that represent Banco Popular, Interamericana has appealed the Dominican Judgment in QST's favor" is also false. BPD and Interamericana have separate counsel.

17

## CONCLUSION

For all the reasons set forth herein, BPD respectfully requests that QST's motion

to dismiss for *forum non conveniens* be denied in its entirety.

Dated:  New York, New York
        December 10, 2007

Respectfully submitted,

HERRICK, FEINSTEIN LLP

_____
Andrew C. Gold
agold@herrick.com
John M. August
jaugust@herrick.com
Mary Ellen Shuttleworth
mshuttleworth@herrick.com
2 Park Avenue
New York, New York 10016
(212) 592-1400

Attorneys for BPD

18