COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 479-6000

Attorneys for Third Party Plaintiff, Levi Strauss & Co.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X

Banco Popular Dominicano, C. Por A.,          :

        Plaintiff and                          :
        Counter-Claim Defendant,
                                               :

    vs.                                       :

Levi Strauss & Co.,                           :

        Defendant and                          :     INDEX No. No. 07 Civ. 6443 (LTS) (THK)
        Third Party Plaintiff,
                                               :     **LIMITED OBJECTION TO THIRD
    vs.                                                 PARTY DEFENDANT QST
                                              :     DOMINICANA LLC'S MOTION TO
                                                    DISMISS FOR FORUM NON
Interamericana Apparel Company, Inc.;         :     CONVENIENS**
Interamericana Products International, S.A.;
QST Dominicana LLC; US Paper & Chemical;      :
Apparel Machinery & Supply Co.; YKK Snap
Fasteners America, Inc.; Southern Textile     :
Dominicana, Inc.; Industria Cartonera
Dominicana, S.A. (Smurfit); The Graphic Label :
Group Dominicana, Inc.; and Tag-It Pacific,
Inc.,                                         :

        Third Party Defendants.                :

------------------------------------------ X

        Levi Strauss & Co. ("LS&CO."), by and through its undersigned counsel, Cooley Godward Kronish, LLP, submits this limited objection (the "Limited Objection") to the motion (the "Motion") of third party defendant QST Dominicana LLC for entry of an order dismissing this case for *forum non conveniens*. In support of its Limited Objection, LS&CO. respectfully represents:

1394566 v7/NY

## PRELIMINARY STATEMENT

LS&CO. objects to the dismissal of this action prior to the Court's adjudication of the first stage of its Interpleader Action.[1] Pursuant to 28 U.S.C 1335, this Court has jurisdiction to adjudicate whether to relieve and discharge LS&CO. from the burden and expense of this litigation, and to award LS&CO. its reasonable attorney's fees and costs. It should make this adjudication prior to ruling on QST's Motion.

QST's invocation of the doctrine of *forum non conveniens* is inapplicable to the first stage of the Interpleader Action and to the question of whether LS&CO. is entitled to a discharge from this case. Although LS&CO. does not take a position with respect to which party is properly entitled to the Receivable (or on procedural issues regarding proper forum and venue for resolution of that issue), the appropriate time to argue the merits of each party's claims to the Receivable is at the second stage of the Interpleader Action – after LS&CO., the innocent stakeholder in this litigation, has been discharged.

Premature dismissal of this case, prior to adjudication of the first stage of the Interpleader Action, would severely prejudice LS&CO. and contravene Congressional policy underlying the interpleader statutes. After being sued by Banco Popular Dominicana, C. Por A., LS&CO. initiated this Interpleader Action in an attempt to bring together all disparate claims asserted against the Receivable under one judicial roof. The Interpleader Action allows for an efficient and final resolution of the adverse claims for LS&CO. to be protected from the burden of multiple claims litigation. If this case is dismissed prior to discharge, LS&CO. will be exposed to litigation by various foreign and domestic parties in multiple fora, as well as the possibility of multiple and inconsistent judgments. Statutory interpleader was designed to avoid such an outcome, and, given that LS&CO. is a disinterested stakeholder that had no control over

---

[1] All capitalized terms are defined below.

the venue of the current litigation, LS&CO. is entitled to the protections afforded by the federal interpleader statutes.

## BACKGROUND

1. On July 16, 2007, Banco Popular Dominicano, C. Por A. ("BPD") filed a complaint (the "Complaint") (Docket No. 1) against LS&CO. in the United States District Court for the Southern District of New York (the "Court") for funds owed to BPD by, inter alia, Interamericana Apparel Company, Inc. and/or Interamericana Products International, S.A. (collectively, "Interamericana") to which LS&CO. admittedly owes $2,325,132.27 for goods purchased from Interamericana (the "Receivable").

2. On August 27, 2007, because multiple parties made a claim to the Receivable in both the Dominican Republic and the United States, LS&CO. filed its answer and counterclaim to the Complaint and third party complaint in interpleader (the "Third Party Complaint," and the action, the "Interpleader Action") against various third party defendants, including QST Dominicana LLC ("QST" and collectively with the other third party defendants the "Third Party Defendants").  (Docket No. 10).

3. On August 28, 2007, by leave of the Court (Docket No. 11), LS&CO. deposited the Receivable into the Court's registry.

4. On October 10, 2007, third party defendant YKK Snap Fasteners, Inc. ("YKK") filed its answer to the Third Party Complaint with jury demand and crossclaim against Interamericana.  (Docket Nos. 33 & 34).

5. On October 24, 2007, QST filed the Motion.  (Docket Nos. 36 & 37).

**LIMITED OBJECTION**

**I.  The Court Should Retain Jurisdiction to Adjudicate the First Stage of the Interpleader Action and Grant LS&CO. a Discharge of Liability as to the Interpleaded Funds and Its Reasonable Attorney's Fees and Costs**

    **A.  The Court Has Jurisdiction over the Interpleader Action**

6.  An interpleader action "is [normally] concluded in two stages, the first determining that the requirements of 28 U.S.C. § 1335 are met and relieving the plaintiff stakeholder from liability, and the second, adjudicating the adverse claims of the defendant claimants." New York Life Ins. Co. v. Conn. Dev. Auth., 700 F.2d 91, 95 (2d Cir. 1983); see also 4 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 22.03[1][a] (3d ed. 2007) (hereafter "Moore's") (recognizing two-stage interpleader process and citing cases).

7.  An interpleader action's first stage can itself be divided into two parts. First, a stakeholder must satisfy the four distinct statutory elements set forth in 28 U.S.C. § 1335 – namely: (1) the interpleader action must involve "money or property worth $500 or more"; (2) "two or more adverse claimants" must claim or be able to claim in the future "to be entitled to such money or property"; (3) at least two of the adverse claimants must be of diverse citizenship "as defined in subsection (a) or (d) of" 28 U.S.C. § 1332; and (4) the plaintiff stakeholder must have "deposited such money or property … into the registry of the court, there to abide the judgment of the court." 28 U.S.C. § 1335.

8.  LS&CO. has satisfied all four elements: (1) the Receivable is more than $2 million; (2) BPD, QST and YKK have all filed answers to the Third Party Complaint claiming adverse interests in the Receivable[2]; (3) upon information and belief, BPD is a bank

---

[2]  This confirms LS&CO.'s legitimate fear of multiple liability, which meets the "minimal threshold of substantiality." General Accident Group v. Gagliardi, 593 F. Supp. 1080, 1087 (D. Conn. 1984). Moreover, the claims by the Third Party Defendants are clearly adverse to one another in that "each claimant asserts sole rights to the" Receivable. Moore's at § 22.03[1][d] (citing Sun Life Assurance Co. v. Thomas, 735 F. Supp. 730, 731-32 (W.D. Mich. 1990)). The claims also are adverse because "the total amount of combined claims … exceed[s] the stake." Id. (citing State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 526, 533 n.15 (1967) (interpleader intended to remedy problem of allocating limited fund among claimants whose claims exceed amount of fund)).

organized under the laws of the Dominican Republic and QST is a limited liability company organized under the laws of the State of Delaware; and (4) as noted above, LS&CO. deposited the Receivable into the Court's registry on August 28, 2007.  QST's Motion makes no claim that this Court lacks jurisdiction or that these elements have not been satisfied.

9. The second issue of the first stage is whether the plaintiff stakeholder claims an interest in the stake or "may be independently liable to a claimant or … has acted in bad faith."  Moore's at § 22.03[2][a] (citing, inter alia, Mendez v. Teachers Ins. & Annuity Ass'n & College Retirement Equities Fund, 982 F.2d 783, 787 (2d Cir. 1992) (court may deny discharge if there are serious charges that stakeholder brought action in bad faith) and N.Y. Life Ins. Co. v. Conn. Dev. Auth., 700 F.2d at 96 (discharge of stakeholder may be delayed if there are charges action was commenced in bad faith).  LS&CO. claims no interest whatsoever in the Receivable and is not independently liable to any particular Third Party Defendant.  Moreover, neither BPD nor any Third Party Defendant has alleged that LS&CO. has acted in bad faith.  LS&CO. is merely an innocent stakeholder with no interest in the outcome of the underlying dispute.

10. LS&CO. is also entitled to the fees and costs of its attorneys related to the Interpleader Action.  See, e.g., Weininger v. Castro, 462 F.Supp.2d 457, 501-02 (S.D.N.Y. 2006) ("Attorney's fees and costs are generally awarded to a disinterested stakeholder who has expended time and money participating in a dispute not of his own making and the outcome of which has no impact on him.") (internal quotations and citations omitted).  A stakeholder such as LS&CO. should be awarded its attorney's fees and costs for two reasons.  First, it has to retain counsel and incur litigation costs "not because of the stakeholder's wrongdoing but rather because he is the mutual target in a dispute which is not of his own making."  United Bank of Denver v. Oxford Properties, Inc., 683 F. Supp. 755, 757 (D. Colo 1988).  Second, the

stakeholder has "performed a service to the claimants by initiating a proceeding which will expeditiously resolve their claims and by safeguarding the disputed fund by deposit in court, which at the same time guarantees the prevailing claimant immediate satisfaction without the need for execution proceedings." Id.  For these reasons, LS&CO. will be entitled to its reasonable attorney's fees and expenses in connection with this Interpleader Action upon discharge.

> B. *Forum Non Conveniens* Does not Apply to the First Stage of the Interpleader Action, and Decision on the Motion Should be Deferred Until After LS&CO. is Discharged

11. The overriding purpose of the *forum non conveniens* doctrine is to permit a district court to dismiss a case "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would 'establish … oppressiveness and vexation to a defendant … out of all proportion to plaintiff's convenience,' and when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1232 (2d Cir. 1996) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981)).  However, the "private and public interest factors" that courts must weigh in a *forum non conveniens* analysis are inapplicable to, and give no cause to dismiss at, the first stage of an interpleader action. Scottish Air, 81 F.3d at 1232.  Instead, each of those factors applies only to the second stage of this Interpleader Action, reached after LS&CO. has been discharged.

12. One "private interest" factor prominently argued in QST's Motion concerns the "availability of witnesses." QST Motion at 8. No witnesses are needed, however, to adjudicate the first stage of the Interpleader Action, and certainly not witnesses in the Dominican Republic. The key first stage facts are undisputed: that the Receivable is more than $500, that at least two of the adverse claimants are sufficiently diverse, and that LS&CO.

deposited the Receivable in the Court's registry. Accordingly, this factor does not apply to the first stage of the Interpleader Action.

13. Another "public interest" factor QST argues in its Motion is whether the chosen forum "impos[es] jury duty on citizens of the forum." Corporacion Tim, S.A. v. Schumacher, 418 F.Supp.2d 529, 535 (S.D.N.Y. 2006). It is well-established that no party has a right to a jury trial at the first stage of an interpleader action. General Accident Group v. Gagliardi, 593 F. Supp. 1080, 1087 (D. Conn. 1984) (in first stage of interpleader, court determines whether interpleader lies); cf., Moore's at § 22.03[3] ("[F]ederal courts agree that there is a constitutional right to a jury trial in the *second* stage of interpleader if there would be a right to a jury trial on those issues when raised in an ordinary civil proceeding.") (emphasis added). Accordingly, this factor is also inapplicable to the first stage of the Interpleader Action.

14. Finally, the Motion's constant references to convenience of the "parties in interest" and their respective "claims to the Stake" underscore that the Motion only applies to the second stage of the Interpleader Action. Accordingly, the *forum non conveniens* factors are inapplicable to the first stage of the Interpleader Action and the Court should defer consideration of the Motion until this action's second stage, after LS&CO. has been discharged. See, e.g., Prevision Integral de Servicios Funerarios, S.A. de C.V. v. Kraft, 94 F.Supp.2d 771 (W.D. Tex. 2000) (court heard motion to dismiss for *forum non conveniens* after disinterested stakeholders were discharged).

**II.  Dismissal of the Interpleader Action Prior to Adjudication of the First Stage Would Severely Prejudice LS&CO.**

15. The overriding purpose of an interpleader action is to "prevent the stakeholder from being obliged to determine at his peril which claimant has the better claim, and when the stakeholder has no interest in the fund, [to] force[] the claimants to contest what essentially is a controversy between them without embroiling the stakeholder in the litigation

over the merits of the respective claims." Weininger, 462 F.Supp.2d at 500 (quoting 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1702 at 534 (3d ed. 2001)).  Stated another way, interpleader "is designed to insulate a stakeholder from contradictory judgments and multiple liability and to relieve a stakeholder from having to determine which claim among several is meritorious." Id. (quoting John v. Sotheby's, Inc., 141 F.R.D. 29, 33 (S.D.N.Y. 1992).

16. LS&CO. instituted the Interpleader Action, because, prior to being served with the Complaint by BPD, LS&CO. had received no less than six formal *Acto De Oposicion De Pagó* notices ("Payment Embargoes") issued pursuant to the laws of the Dominican Republic, and one Notice of Attachment from Tag-It Pacific, Inc. in California.  Pursuant to the Payment Embargoes and the Notice of Attachment, LS&CO. was directed to hold the Receivable or risk incurring liability to other Interamericana creditors that had served Payment Embargoes on LS&CO.  Accordingly, LS&CO. initiated this Interpleader Action to protect itself from multiple liability and inconsistent judgments by Interamericana's creditors, including BPD and the Third Party Defendants.

17. Dismissing the Interpleader Action before granting LS&CO.'s discharge would undermine the primary rationale of statutory interpleader by exposing LS&CO. to multiple and conflicting claims of BPD and the other Interamericana creditors. If this action were prematurely dismissed, upon the Receivable's return to LS&CO. each of these creditors would likely pursue individual actions against LS&CO. in their forum of choice.  LS&CO.'s burden and expense of answering each individual action would only be exacerbated by the inevitable entry of inconsistent judgments – all of which would clearly prejudice LS&CO. given its ultimate indifference as to which party is legally entitled to the Receivable.

WHEREFORE, LS&CO. respectfully requests entry of an order denying the Motion to the extent set forth in this Limited Objection, by delaying the adjudication of the Motion until the Court determines LS&CO.'s entitlement to a discharge and reasonable attorney's fees and costs, and granting such additional relief as is just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 10, 2007 | COOLEY GODWARD KRONISH LLP<br>101 California Street, 5th Floor<br>San Francisco, CA 94111-5800<br>(415) 693-2000<br>Robert E. Eisenbach III (Cal. Bar No. 124896)<br>reisenbach@cooley.com |
|  | -and- |
|  | 1114 Avenue of the Americas<br>New York, New York 10036<br>(212) 479-6000 |
|  | By: _____<br>    Ronald R. Sussman (RS 0641)<br>    rsussman@cooley.com<br>    Gregory G. Plotko (GP 9234)<br>    gplotko@cooley.com |
|  | -and- |
|  | Levis Strauss & Co.<br>1155 Battery Street<br>San Francisco, CA 94111<br>Tracy M. Preston, Esq. (Cal. Bar No. 154393) |
|  | Attorneys for Defendant and Third-Party Plaintiff<br>Levi Strauss & Co. |