## SECURITY AGREEMENT

**SECURITY AGREEMENT**, dated as of December 22 , 2005 (this "Security Agreement") among **Interbojos, Ltd.**, a company organized under the laws of the British Virgin Islands, **Interamericana Apparel Company, Inc.**, a company organized under the laws of the British Virgin Islands, **Interamericana Products International (Panama), S.A.**, a company organized under the laws of Panama, **J.B.S., S.A.**, a company organized under the laws of the Dominican Republic, **Juan Bojos, C. por A.**, a company organized under the laws of the Dominican Republic, **Bojos Leather, Ltd.**, a company organized under the laws of Grand Cayman, **Bojos Manufacturing Ltd.**, a company organized under the laws of the Grand Cayman (each such company referred to herein individually as a *"Grantor"* and collectively as the *"Grantors"*) and **BANCO POPULAR DOMINICANO, C. POR A.**, a bank organized under the laws of the Dominican Republic, as bank agent, collateral agent or administrative agent for the Secured Parties (in such capacity, the *"Administrative Agent"*).

The Secured Parties have agreed to make extensions of credit to one or more of the Grantors, which extensions of credit are being guaranteed by certain of the Grantors, all of which is reflected in certain loan documents evidencing and governing a certain i) A Loan in the amount of up to US$30,000,000.00 made by certain of the Secured Parties to certain Grantors and guaranteed by certain other Grantors, and (ii) a B Loan in the amount of up to US$15,000,000.00 made by certain of the Secured Parties to certain Grantors and guaranteed by certain other Grantors, with BANCO POPULAR DOMINICANO, C. POR A. in each case serving as collateral agent or Administrative Agent (collectively, the "Financing Facility"). The obligations of the Secured Parties to make extensions of credit under the Financing Facility are conditioned upon, among other things, the execution and delivery by the Grantors of an agreement in the form hereof to secure the Obligations.

Accordingly, the Grantors and the Administrative Agent hereby agree as follows:

Section 1.    Definitions

(a) Unless the context otherwise requires, capitalized terms used herein and not defined herein shall have the meanings assigned to such terms in the applicable Loan Document.

(b) As used herein, the following terms shall have the following meanings:

*"Account Debtor"*: as defined in the Local UCC.

*"Accounts"*: as defined in the Local UCC.

3086807_6.DOC
36003.550
HF 3086807v.6 #10675/0005

BPD0001

"*Accounts Receivable*": all Accounts and all right, title and interest in any returned goods, together with all rights, titles, securities and guarantees with respect thereto, including any rights to stoppage in transit, replevin, reclamation and resales, and all related security interests, liens and pledges, whether voluntary or involuntary, in each case whether now existing or owned or hereafter arising or acquired.

"*Chattel Paper*": as defined in the Local UCC.

"*Collateral*": with respect to any Grantor, all Accounts Receivable of every kind and nature, wherever located, whether now owned or hereafter acquired or arising, and all Proceeds and products thereof, including, without limitation, all (i) Accounts Receivable, (ii) Factor Balances, (iii) General Intangibles, (iv) Instruments, (v) Pledged Debt, (vi) Documents, (vii) Chattel Paper (whether tangible or electronic), (viii) Deposit Accounts, (ix) Supporting Obligations, (x) Letter of Credit Rights (whether or not the letter of credit is evidenced by a writing), (xi) Commercial Tort Claims (xi) any other contract rights or rights to the payment of money, (xiii) insurance claims and proceeds, and (xiv) unless otherwise agreed upon in writing by such Grantor and the Administrative Agent, other property owned or held by or on behalf of such Grantor that may be delivered to and held by the Administrative Agent (or its designee) or any Secured Party pursuant to the terms hereof. Notwithstanding anything to the contrary contained herein or in any other Loan Document, for purposes hereof, the term "*Collateral*" shall not include (a) any right under any General Intangible if the granting of a security interest therein or an assignment thereof would violate any enforceable provision of such General Intangible, and (b) any Intellectual Property.

"*Commercial Tort Claims*": as defined in the Local UCC.

"*Deposit Accounts*": as defined in the Local UCC, including without limitation any and all monies, securities and other property of the Grantors, and the proceeds thereof from or for any Grantor, whether for safekeeping, custody, pledge, transmission, collection or otherwise) now or hereafter held or received by or in transit to the Administrative Agent, any Secured Party, or any of their affiliates, or any intermediary bank which is party to a control agreement between such Grantor and the Administrative Agent or one or more Secured Parties.

"*Documents*": as defined in the Local UCC.

"*Event of Default*": Each of the following is an "*Event of Default*": (a) a default under, or as such term is defined in, any of the Loan Documents; (b) the failure of the Grantors to perform any covenant or fulfill any other obligation of under this Security Agreement; or (c) the closing of any Deposit Account subject to a control agreement among one or more Grantors, the depository bank (which initially is BPD Bank), and the Administrative Agent, without the simultaneous substitution of another similar account and the transfer thereto of the Collateral therein, subject to a control agreement

HF 3086807v.6 #10675/0005

BPD0002

substantially similar to the control agreement previously in place (or in form and substance otherwise acceptable to the Administrative Agent).

"*Factor Balances*" means all sums and claims for sums due, to become due or otherwise credited to the account of any Grantor under, arising out of or in any way connected with any factoring agreement or arrangement entered into between such Grantor and any other party with respect to receivables owing to the Grantor from time to time and purchased by such party from the Grantor, including all amendments and modifications thereto or replacements thereof, all proceeds thereof and any rights of the Grantor to the receipt of money thereunder.

"*General Intangibles*": as defined in the Local UCC, and shall include, without limitation, all corporate or other business records and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics, all, indemnification claims, contract rights (including rights under leases, whether entered into as lessor or lessee, interest rate protection agreements and other agreements), goodwill, registrations, franchises, tax refund claims, guarantees, and with respect to Accounts Receivable and Pledged Debt, all claims, security interests or other security held by or granted to any Grantor to secure payment by an Account Debtor of any of the Accounts Receivable or payment by the relevant obligor of any of the Pledged Debt.

"*Instruments*": all promissory notes and all other instruments as defined in Article 9 (and not Article 3) of the Local UCC.

"*Intellectual Property*": all intellectual and similar property of any Grantor of every kind and nature now owned or hereafter acquired by any Grantor, including inventions, designs, patents, copyrights, trademarks, licenses, trade secrets, confidential or proprietary technical and business information, customer lists, know-how, show-how or other data or information, software and databases and all embodiments or fixations thereof and related documentation, registrations and franchises, and all additions, improvements and accessions to, and books and records describing or used in connection with, any of the foregoing.

"*Letter of Credit Rights*": as defined in the Local UCC.

"*Loan Documents*": this Agreement and each document, agreement and instrument executed in connection with the Financing Facility or herewith, together with each document, agreement and instrument made by any Grantor with or in favor of the Administrative Agent or any of the Secured Parties or their affiliates with respect to the Financing Facility, as each may be amended, modified, restated or supplemented, or replaced from time to time.

"*Local UCC*": the UCC as in effect in the State of New York on the date hereof and as amended hereafter.

HF 3086807v.6 #10675/0005

BPD0003

"*Obligations*" means all indebtedness, obligations and liabilities of the Grantors to the Secured Parties in respect of the Financing Facility, individually or collectively, whether direct or indirect, joint, several or independent, absolute or contingent, due or to become due, or held or to be held by, the Secured Parties for their own account or as agent for another or others, whether created directly or acquired by assignment or otherwise and howsoever evidenced now existing or hereafter arising.

"*Pledged Debt*": all right, title and interest of any Grantor to the payment of any loan, advance or other debt of every kind and nature (other than Accounts Receivable and General Intangibles), whether due or to become due, whether or not it has been earned by performance, and whether now or hereafter acquired or arising in the future.

"*Proceeds*":  as defined in the Local UCC, and shall include, without limitation, any consideration received from the sale, exchange, license, lease or other disposition of any asset or property that constitutes Collateral, any value received as a consequence of the possession of Collateral and any payment received from any insurer or other person or entity as a result of the destruction, loss, theft, damage or other involuntary conversion of whatever nature of any asset or property that constitutes Collateral and any and all other amounts from time to time paid or payable under or in connection with the Collateral.

"*Secured Parties*":  collectively, the Administrative Agent and each of the other financial institutions invited by the Administrative Agent to join in providing extensions of credit under the Financing Facility, and the successors, assigns and affiliates of each of the foregoing.

"*Security Interest*": as defined in Section 2(a).

"*Supporting Obligations*": as defined in the Local UCC.

"*UCC*":  with respect to any jurisdiction, the Uniform Commercial Code as from time to time in effect in such jurisdiction.

Section 2.        Grant of Security Interest; No Assumption of Liability

(a) As security for the payment or performance, as applicable, in full of the Obligations, each of the Grantors hereby bargains, sells, conveys, assigns, sets over, mortgages, pledges, hypothecates and transfers to the Administrative Agent for the ratable benefit of the Secured Parties, and hereby grants to the Administrative Agent for the ratable benefit of the Secured Parties a security interest in, all of the right, title and interest of such Grantor in, to and under the Collateral (the "*Security Interest*").  Without limiting the foregoing, the Administrative Agent is hereby authorized to file one or more financing statements, continuation statements, recordation or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the Security Interest granted by

HF 3086807v.6 #10675/0005

BPD0004

each of the Grantors, without the signature of any Grantor, and naming any Grantor or the Grantors, as applicable, as debtors and the Administrative Agent as secured party.

(b) The Security Interest is granted as security only and shall not subject any Secured Party to, or in any way alter or modify, any obligation or liability of any Grantor with respect to or arising out of the Collateral.

Section 3.       Delivery of the Collateral; Certain Additional Rights.

Each of the Grantors agrees promptly upon the request of the Administrative Agent to deliver or cause to be delivered to the Administrative Agent any and all notes, Chattel Paper, instruments, certificates, files, records, ledger sheets and documents covering, evidencing, representing or relating to any of the Collateral, or any other amount that becomes payable under or in connection with any Collateral, owned or held by or on behalf of such Grantor. Each Grantor will cause any Pledged Debt owed or owing to such Grantor by any Person to be evidenced by a duly executed promissory note that is pledged and delivered to the Administrative Agent pursuant to the terms hereof.

Section 4.       Representations and Warranties

Each of the Grantors, jointly with the others and severally, represents and warrants to the Administrative Agent and the Secured Parties that:

(a) Such Grantor has good and valid rights in and title to the Collateral and has full power and authority to grant to the Administrative Agent for the ratable benefit of the Secured Parties the Security Interest in the Collateral pursuant hereto and to execute, deliver and perform its obligations in accordance with the terms of this Security Agreement, without the consent or approval of any other Person other than any consent or approval which has been obtained.

(b) (i) no financing statement (other than any which may have been filed on behalf of the Administrative Agent, and any filings made in connection with leases of specific equipment) relating to any of the Collateral is on file in any public office; (ii) the Chief Executive Office of such Grantor and country and state of organization of such Grantor are respectively listed at the locations set forth at the end of this Agreement and such Grantor will not change such location without prior written notice to and consent of the Administrative Agent; (iii) other than the Chief Executive Office, Collateral is only located at the locations set forth at the end of this Agreement and such Grantor will not change any such location without prior written notice to and consent of the Administrative Agent; and (iv) such Grantor has not created and is not aware of any security interest, lien or encumbrance on or affecting the Collateral other than those created hereby and those which shall be terminated on the date hereof.

(c)  Any due diligence checklist delivered to the Administrative Agent or its counsel, to the extent it relates to such Grantor or any of its Collateral or other

-5-

BPD0005

property, has been duly prepared and completed and the information set forth therein is correct and complete.

(d) The Security Interest constitutes (i) a legal and valid Lien on and security interest in all of the Collateral securing the payment and performance of the Obligations, (ii) subject to (A) filing Uniform Commercial Code financing statements, or other appropriate filings, recordings or registrations containing a description of the Collateral owned or held by or on behalf of such Grantor (including, without limitation, a counterpart or copy of this Security Agreement) in each applicable governmental, municipal or other office and (B) the delivery to the Administrative Agent of any instruments included in such Collateral, a perfected security interest in such Collateral to the extent that a security interest may be perfected by filing, recording or registering a financing statement or analogous document, or by the Administrative Agent's taking possession, in the United States (or any political subdivision thereof) and its territories and possessions pursuant to the UCC or other applicable law in such jurisdictions.

(e) The Security Interest is and shall be prior to any other Lien on any of the Collateral owned or held by or on behalf of such Grantor other than Liens expressly permitted pursuant to the Loan Documents. The Collateral owned or held by or on behalf of such Grantor is so owned or held by it free and clear of any Lien, except for Liens expressly permitted pursuant to the Loan Documents.

(f) With respect to each Account Receivable (i) no transaction giving rise to such Account Receivable violated or will violate any applicable federal, state or local law, rule or ordinance, the violation of which could reasonably be expected to have a material adverse effect on the business, operations, property or financial or other condition of such Grantor, or materially adversely affect the ability of such Grantor to perform its obligations under the Loan Documents to which it is a party, (ii) such Account Receivable is not subject to terms prohibiting the assignment thereof or requiring notice or consent to such assignment, except for notices and consents that have been obtained and (iii) such Account Receivable represents a bona fide transaction which requires no further act on such Grantor's part to make such Account Receivable payable by the Account Debtor with respect thereto, and such Account Receivable is not subject to any offsets or deductions and does not represent any consignment sales, guaranteed sale, sale or return or other similar understanding or any obligation of any Affiliate of such Grantor, except for chargebacks made in the ordinary course of business and in accordance with standard practices used in the industry and business in which such Grantor is engaged.

Section 5.      Covenants

(a) Each of the Grantors shall provide the Administrative Agent with not less than 15 Business Days prior written notice of any change (i) in its legal name, (ii) in its jurisdiction of organization or formation, (iii) in the location of its chief executive office or principal place of business, (iv) in its identity or legal or organizational structure or (v) in its organization identification number or its Federal Taxpayer Identification Number, if

HF 3086807v.6 #10675/0005

BPD0006

any, and shall execute and deliver to the Administrative Agent such instruments, agreements and documents as the Administrative Agent shall reasonably request so that the Administrative Agent may make all filings under the UCC or otherwise that are required in order for the Administrative Agent for the ratable benefit of the Secured Parties to continue at all times following such change to have a valid, legal and perfected first priority security interest in all the Collateral [(subject only to Liens expressly permitted to be prior to the Security Interest pursuant to the Loan Documents)]. Each Grantor shall promptly notify the Administrative Agent if any material portion of the Collateral owned or held by or on behalf of such Grantor is damaged or destroyed.

(b) Each of the Grantors shall maintain, at its own cost and expense, such complete and accurate records with respect to the Collateral owned or held by it or on its behalf as is consistent with its current practices and in accordance with such prudent and standard practices used in industries that are the same as or similar to those in which it is engaged, but in any event to include complete accounting records indicating all payments and proceeds received with respect to any part of such Collateral, and, at such time or times as the Administrative Agent may reasonably request, promptly to prepare and deliver to the Administrative Agent copies of such records as duly certified by an officer of such Grantor and/or a duly certified schedule or schedules in form and detail satisfactory to the Administrative Agent showing the identity and amount of any and all such Collateral.

(c) Each of the Grantors shall, at its own cost and expense, take any and all actions reasonably necessary to defend title to the Collateral owned or held by it or on its behalf against all Persons and to defend the Security Interest in such Collateral and the priority thereof against any Lien not expressly permitted pursuant to the Loan Documents.

(d) Each of the Grantors shall, at its own expense, execute, acknowledge, deliver and cause to be duly filed all such further instruments and documents and take all such actions as the Administrative Agent may from time to time reasonably request to preserve, protect and perfect the Security Interest granted by it and the rights and remedies created hereby, including the payment of any fees and taxes required in connection with its execution and delivery of this Security Agreement, the granting by it of the Security Interest and the filing of any financing statements or other documents in connection herewith or therewith.

(e) The Administrative Agent and each Secured Party and such persons as the Administrative Agent or any Secured Party may reasonably designate shall have the right, at the cost and expense of the Grantors, and upon reasonable prior notice, at reasonable times and during normal business hours, to inspect all of its records (and to make extracts and copies from such records), to discuss its affairs with its officers and independent accountants and to verify under reasonable procedures the validity, amount, quality, quantity, value, condition and status of, or any other matter relating to, the Collateral owned or held by it or on its behalf, including, in the case of Accounts, Pledged Debt or Collateral in the possession of any third person, by contacting Account Debtors,

-7-

HF 3086807v.6 #10675/0005

BPD0007

obligors or the third person possessing such Collateral for the purpose of making such a verification.

(f) Each of the Grantors shall remain liable to observe and perform all the conditions and obligations to be observed and performed by it under each contract, agreement or instrument relating to the Collateral, all in accordance with the terms and conditions thereof, and such Grantor shall, jointly with the others and severally, indemnify and hold harmless the Secured Parties from and against any and all liability for such performance.

(g) None of the Grantors shall make or permit to be made an assignment, pledge or hypothecation of the Collateral owned or held by it or on its behalf, or shall grant any other Lien in respect of such Collateral, except as expressly permitted by the Loan Documents. Except for the Security Interest, no Grantor shall make or permit to be made any transfer of such Collateral, and each Grantor shall remain at all times in possession of such Collateral and shall remain the direct owner, beneficially and of record, except that prior to the occurrence and during the continuance of an Event of Default, the Grantors may use and dispose of the Collateral in any lawful manner not inconsistent with the provisions of this Security Agreement, or any other Loan Document.

(h) None of the Grantors will, without the Administrative Agent's prior written consent, grant any extension of the time of payment of any Accounts Receivable, compromise, compound or settle the same for less than the full amount thereof or allow any credit or discount whatsoever thereon, other than extensions, credits, discounts, compromises or settlements granted or made in the ordinary course of business and consistent with its current practices and in accordance with such prudent and standard practices used in industries that are the same as or similar to those in which such Grantor is engaged.

(i) At the written request of the Administrative Agent and in any event upon the occurrence of an Event of Default, each Grantor shall legend its Accounts Receivable, its Pledged Debt and its books, records and documents evidencing or pertaining thereto with an appropriate reference to the fact that such Accounts Receivable have been assigned to the Administrative Agent for the ratable benefit of the Secured Parties and that the Administrative Agent has a security interest therein for the ratable benefit of the Secured Parties.

(j) Each Grantor agrees that the Administrative Agent may transfer Collateral into its name or that of its nominee and may receive the income and any distributions thereon and hold the same as Collateral for the Obligations, or apply the same to any Obligation, in each case from and after the time an Event of Default has occurred and is continuing.

-8-

BPD0008

Section 6.        Certain Rights as to the Collateral; Attorney-In-Fact

(a) Each Grantor hereby irrevocably appoints the Administrative Agent such Grantor's attorney-in-fact, with full authority in the place and stead of such Grantor and in the name of such Grantor or otherwise, from time to time at any time when an Event of Default exists, in the Administrative Agent's discretion, to take any action and to execute any instrument which the Administrative Agent may deem necessary or advisable to accomplish the purposes of this Security Agreement, including, without limitation:

(i)        to ask for, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral, and to receive, indorse, and collect any drafts or other chattel paper, instruments and documents in connection therewith,

(ii)        to file any claims or take any action or institute any proceedings which the Administrative Agent may deem necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of the Administrative Agent or any of the other Secured Parties with respect to any of the Collateral, and

(iii)        to receive, indorse and collect all instruments made payable to such Grantor representing any dividend, principal payment, interest payment or other distribution in respect of the Collateral or any part thereof and to give full discharge for the same. The powers granted to the Administrative Agent under this Section constitute a power coupled with an interest which shall be irrevocable by such Grantor and shall survive until all of the Obligations have been indefeasibly paid in full in cash.

(b) If any Grantor fails to perform any agreement contained herein, the Administrative Agent may itself perform, or cause performance of, such agreement, and the reasonable expenses of the Administrative Agent incurred in connection therewith shall be payable by the Grantors under Section 9.

(c) The powers conferred on the Administrative Agent hereunder are solely to protect its and the other Secured Parties interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Except for the safe custody of any Collateral in its possession and the accounting for moneys actually received by it hereunder, the Administrative Agent shall have no duty as to any Collateral. The Administrative Agent shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which the Administrative Agent accords its own property.

Section 7.        Remedies upon Default

(a) Upon the occurrence and during the continuance of an Event of Default, each of the Grantors shall deliver each item of Collateral to the Administrative Agent on demand, and the Administrative Agent shall have in any jurisdiction in which

HF 3086807v.6 #10675/0005

BPD0009

enforcement hereof is sought, in addition to any other rights and remedies, the rights and remedies of a secured party under the Local UCC or the UCC of any jurisdiction in which the Collateral is located, including, without limitation, the right, with or without legal process (to the extent permitted by law) and with or without prior notice or demand for performance, to take possession of the Collateral and without liability for trespass (to the extent permitted by law) to enter any premises where the Collateral may be located for the purpose of taking possession of or removing the Collateral (and for that purpose the Administrative Agent may, so far as the Grantors can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the Collateral therefrom) and, generally, to exercise any and all rights afforded to a secured party under the UCC or other applicable law. Without limiting the generality of the foregoing, each of the Grantors agrees that the Administrative Agent shall have the right, subject to the mandatory requirements of applicable law, to sell or otherwise dispose of all or any part of the Collateral, at public or private sale or at any broker's board or on any securities exchange, for cash, upon credit or for future delivery as the Administrative Agent shall deem appropriate. Each such purchaser at any such sale shall hold the property sold absolutely, free from any claim or right on the part of any Grantor, and each of the Grantors hereby waives (to the extent permitted by law) all rights of redemption, stay, valuation and appraisal which such Grantor or now has or may at any time in the future have under any rule of law or statute now existing or hereafter enacted.

(b) Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Administrative Agent shall give to the Grantors at least five Business Days prior written notice of the time and place of any public sale of Collateral or of the time after which any private sale or any other intended disposition is to be made. Each Grantor hereby acknowledges that five Business Days prior written notice of such sale or sales shall be reasonable notice. Each Grantor hereby waives any and all rights that it may have to a judicial hearing in advance of the enforcement of any of the Secured Parties' rights hereunder, including, without limitation, the right of the Administrative Agent following an Event of Default to take immediate possession of the Collateral and to exercise the Secured Parties' rights with respect thereto. Upon the occurrence and continuance of an Event of Default, in addition to all of the other rights the Secured Parties may have herein or by applicable law, the Administrative Agent shall have the right to deliver a notice of exclusive control to the depository bank or securities intermediary with respect to any Deposit Account that is an operating account of a Grantor subject to a control agreement among one or more grantors, such depository bank or securities intermediary and the Administrative Agent, and to otherwise revoke trading and other rights of the Grantors with respect to such operating accounts and the Collateral therein. Nothing contained in this Security Agreement shall limit or prevent the Administrative Agent from exercising exclusive control from the start regarding the reserve account (and the Collateral therein) established at BPD Bank with respect to the Grantors.

HF 3086807v.6 #10675/0005

BPD0010

(c) Any such public sale shall be held at such time or times within ordinary business hours and at such place or places as the Administrative Agent may fix and state in the notice (if any) of such sale. At any such public or private sale, the Collateral, or any portion thereof, to be sold may be sold in one lot as an entirety or in separate parcels, as the Administrative Agent may (in its sole and absolute discretion) determine. The Administrative Agent shall not be obligated to make any sale of any Collateral if it shall determine not to do so, regardless of the fact that notice of sale of such Collateral shall have been given. The Administrative Agent may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned. In case any sale of all or any part of the Collateral is made on credit or for future delivery, the Collateral so sold may be retained by the Administrative Agent until the sale price is paid by the purchaser or purchasers thereof, but the Secured Parties shall not incur any liability in case any such purchaser or purchasers shall fail to take up and pay for the Collateral so sold and, in case of any such failure, such Collateral may be sold again upon like notice. At any public (or, to the extent permitted by applicable law, private) sale made pursuant to this Section, any Secured Party may bid for or purchase, free from any right of redemption, stay, valuation or appraisal on the part of any Grantor (all said rights being also hereby waived and released), the Collateral or any part thereof offered for sale and may make payment on account thereof by using any claim then due and payable to any Secured Party from any Grantor as a credit against the purchase price, and such Secured Party may, upon compliance with the terms of sale, hold, retain and dispose of such property without further accountability to any Grantor therefor. For purposes hereof, (i) a written agreement to purchase the Collateral or any portion thereof shall be treated as a sale thereof, (ii) such Secured Party shall be free to carry out such sale pursuant to such agreement and (iii) none of the Grantors shall be entitled to the return of the Collateral or any portion thereof subject thereto, notwithstanding the fact that after such Secured Party shall have entered into such an agreement all Events of Default shall have been remedied and the Obligations paid in full. As an alternative to exercising the power of sale herein conferred upon it, the Secured Parties may proceed by a suit or suits at law or in equity to foreclose upon the Collateral and to sell the Collateral or any portion thereof pursuant to a judgment or decree of a court or courts having competent jurisdiction or pursuant to a proceeding by a court-appointed receiver.

(d) Any sale pursuant to the provisions of this Section 7 shall be deemed to conform to commercially reasonable standards as provided in Section 9-610 of the Local UCC or the UCC of any other jurisdiction in which Collateral is located or any other requirement of applicable law. Without limiting the foregoing, each Grantor agrees and acknowledges that, to the extent that applicable law imposes duties on the Administrative Agent and the other Secured Parties to exercise remedies in a commercially reasonable manner, it shall be commercially reasonable for the Secured Parties to do any or all of the following: (i) fail to incur expenses deemed significant by the Secured Parties to prepare Collateral for disposition or otherwise to complete raw materials or work in process into

-11-

BPD0011

finished goods or other finished products for disposition; (ii) fail to obtain third party consents for access to Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of Collateral to be collected or disposed of, (iii) fail to exercise collection remedies against Account Debtors or other persons obligated on Collateral or to remove Liens on any Collateral, (iv) exercise collection remedies against Account Debtors and other Persons obligated on Collateral directly or through the use of collection agencies and other collection specialists, (v) advertise dispositions of Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature, (vi) contact other Persons, whether or not in the same business as the Grantors, for expressions of interest in acquiring all or any portion of the Collateral, (vii) hire one or more professional auctioneers to assist in the disposition of Collateral, whether or not the Collateral is of a specialized nature, (viii) dispose of Collateral utilizing Internet sites that provide for the auction of assets of the types included in the Collateral or that have a reasonable capability of doing so, or that match buyers and sellers of assets, (ix) disclaim dispositions of warranties, (x) purchase (or fail to purchase) insurance or credit enhancements to insure the Secured Parties against risk of loss, collection or disposition of Collateral or to provide to the Secured Parties a guaranteed return from the collection or disposition of Collateral, or (xi) to the extent deemed appropriate by the Administrative Agent, obtain the services of other brokers, investment bankers, consultants and other professionals to assist the Administrative Agent in the collection or disposition of any of the Collateral. Nothing in this Section 7 shall be construed to grant any rights to the Grantors or to impose any duties on the Secured Parties that would not have been granted or imposed by this Security Agreement or applicable law in the absence of this Section 7 and the parties hereto acknowledge that the purpose of this Section 7 is to provide non-exhaustive indications of what actions or omissions by the Administrative Agent and the other Secured Parties would be deemed commercially reasonable in the exercise by the Secured Parties of remedies against the Collateral and that other actions or omissions by the Administrative Agent or any other Secured Party shall not be deemed commercially unreasonable solely on account of not being set forth in this Section 7.

Section 8.    Application of Proceeds of Sale

The Administrative Agent shall apply the proceeds of any collection or sale of the Collateral, as well as any Collateral consisting of cash, *first*, to the payment of all costs and expenses incurred by the Secured Parties in connection with such collection or sale or otherwise in connection with this Security Agreement, any other Loan Document or any of the Obligations, including all court costs and the reasonable fees and expenses of their respective agents and legal counsel, the repayment of all advances made by the Secured Parties hereunder or under any other Loan Document on behalf of any Grantor and any other costs or expenses incurred in connection with the exercise of any right or remedy hereunder or under any other Loan Document, *second*, to the payment in full of the Obligations, and *third*, to the Grantors, their respective successors or assigns, or as a court of competent jurisdiction may otherwise direct.  The Secured Parties shall have

-12-

BPD0012

absolute discretion as to the time of application of any such proceeds, moneys or balances in accordance with this Security Agreement.  Upon any sale of the Collateral by the Administrative Agent (including pursuant to a power of sale granted by statute or under a judicial proceeding), the receipt of the purchase money by the Administrative Agent or of the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of the Collateral so sold and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to the Administrative Agent or such officer or be answerable in any way for the misapplication thereof.

Section 9.    Reimbursement of the Secured Parties

(a) Each of the Grantors shall, jointly with the other Grantors and severally, pay upon demand to the Administrative Agent the amount of any and all reasonable expenses, including the reasonable fees, other charges and disbursements of counsel and of any experts or agents, that any Secured Party may incur in connection with (i) the administration, including without limitation, amendments, modifications and waivers of this Security Agreement relating to such Grantor or any of its property, (ii) the custody or preservation of, or the sale of, collection from, or other realization upon, any of the Collateral owned or held by or on behalf of such Grantor, (iii) the exercise, enforcement or protection of any of the rights of the Secured Parties hereunder relating to such Grantor or any of its property or (iv) the failure by such Grantor to perform or observe any of the provisions hereof.

(b) Without limitation of its indemnification obligations under the other Loan Documents, each of the Grantors shall, jointly with the other Grantors and severally, indemnify each Secured Party and its directors, officers, employees, advisors, agents, successors and assigns (each an *"Indemnitees"*) against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related expenses, including reasonable counsel fees, other charges and disbursements, incurred by or asserted against any Indemnitee arising out of, in any way connected with, or as a result of (i) the execution or delivery by such Grantor of this Security Agreement or any other Loan Document or any agreement or instrument contemplated hereby or thereby, the performance by such Grantor of its obligations under the Loan Documents and the other transactions contemplated thereby or (ii) any claim, litigation, investigation or proceeding relating to any of the foregoing, whether or not any Indemnitee is a party thereto, *provided* that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee.

(c) Any amounts payable as provided hereunder shall be additional Obligations secured hereby and by the other Loan Documents.  The provisions of this Section shall remain operative and in full force and effect regardless of the termination of this Security Agreement or any other Loan Document, the consummation of the transactions contemplated hereby, the repayment of any of the Obligations, the invalidity

-13-

BPD0013

or unenforceability of any term or provision of this Security Agreement or any other Loan Document or any investigation made by or on behalf of any Secured Party. All amounts due under this Section shall be payable on written demand therefor and shall bear interest at the Post Default Rate.

Section 10.     Waivers; Amendment

(a) No failure or delay of the Secured Parties in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of the Secured Parties hereunder and under the other Loan Documents are cumulative and are not exclusive of any rights or remedies that they would otherwise have. No waiver of any provision of this Security Agreement or any other Loan Document or consent to any departure by any Grantor therefrom shall in any event be effective unless the same shall be permitted by paragraph (b) of this Section, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice or demand on any Grantor in any case shall entitle such Grantor to any other or further notice or demand in similar or other circumstances.

(b) Neither this Security Agreement nor any provision hereof may be waived, amended or modified except pursuant to a written agreement entered into by, between or among the Administrative Agent, the Borrower and any other parties hereto with respect to which such waiver, amendment or modification is to apply, subject to any consent required in accordance with any provision of the Loan Documents, if applicable.

-14-

BPD0014

Section 11. Tax Gross-Up. All payments made hereunder shall be effectively made to the Administrative Agent in lawful money of the United States of America (in freely transferable U.S. Dollars) and in funds available to the Administrative Agent as the Administrative Agent may direct without setoff or counterclaim and free and clear of and exempt from, and without deduction for or on account of, any present or future taxes (not including a tax imposed on and calculated by reference to the net income paid to and received by the Administrative Agent by the jurisdiction in which it is incorporated or in which its lending office is located), levies, imposts, duties, deduction, withholdings or other charges of whatsoever nature, imposed, levied, collected, withheld or assessed by or within the any political sub-division or taxing authority of the Grantors (for the purpose of this paragraph collectively the "Taxes"). In the event that, notwithstanding the foregoing provisions of this paragraph any payments made hereunder on account of any obligations of the Grantors to the Administrative Agent shall not be made free and clear of and exempt from and without deduction for or on account of, any Taxes then and in any such event the respective Grantor shall pay such additional amounts as may be necessary in order that each net payment to the Administrative Agent, after payment or deduction or withholding for or on account of any Taxes, will not be less than the amount provided for in the obligations of the such Grantor to the Administrative Agent or hereunder to be then due and payable.

Section 12.    Security Interest Absolute

All rights of the Administrative Agent hereunder, the Security Interest and all obligations of each of the Grantors hereunder shall be absolute and unconditional irrespective of (a) any lack of validity or enforceability of any of the Loan Documents, any agreement with respect to any of the Obligations or any other agreement or instrument relating to any of the foregoing, (b) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to any departure from any Loan Document or any other agreement or instrument relating to any of the foregoing, (c) any exchange, release or non-perfection of any Lien on any other collateral, or any release or amendment or waiver of, or consent under, or departure from, any guaranty, securing or guaranteeing all or any of the Obligations or (d) any other circumstance that might otherwise constitute a defense available to, or a discharge of, any Grantor in respect of the Obligations or in respect of this Security Agreement or any other Loan Document other than the indefeasible payment of the Obligations in full in cash.

Section 13.    Notices

All communications and notices hereunder shall be in writing and given as provided in the agreements governing the Financing Facility.   All communications and notices hereunder to any Grantor shall be given to it at the address for notices set forth on Schedule I.

-15-

BPD0015

Section 14.    Binding Effect; Several Agreement; Assignments

Whenever in this Security Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party; and all covenants, promises and agreements by or on behalf of any Grantor that are contained in this Security Agreement shall bind and inure to the benefit of each party hereto and its successors and assigns. This Security Agreement shall become effective as to any Grantor when a counterpart hereof executed on behalf of such Grantor shall have been delivered to the Administrative Agent and a counterpart hereof shall have been executed on behalf of the Administrative Agent, and thereafter shall be binding upon such Grantor, the Administrative Agent and the other Secured Parties and their respective successors and assigns, and shall inure to the benefit of such Grantor, the Administrative Agent and such other Secured Parties and their respective successors and assigns, except that none of the Grantors shall have the right to assign its rights or obligations hereunder or any interest herein or in the Collateral without the prior written consent of each of the Secured Parties (and any such attempted assignment without such consent shall be void), except as expressly contemplated by this Security Agreement or the other Loan Documents (it being understood that one or more of the Grantors may enter into factoring arrangements so long as the Administrative Agent has entered into an assignment of factor credit balances agreement with each factor, in form and substance satisfactory to the Administrative Agent). This Security Agreement shall be construed as a separate agreement with respect to each of the Grantors and may be amended, modified, supplemented, waived or released with respect to any Grantor without the approval of any other Grantor and without affecting the obligations of any other Grantor hereunder.

Section 15.    Survival of Agreement; Severability

(a) All covenants, agreements, representations and warranties made by the Grantors herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Security Agreement or any other Loan Document shall be considered to have been relied upon by the Secured Parties and shall survive the execution and delivery of any Loan Documents and the making of any extension of credit, regardless of any investigation made by the Secured Parties or on their behalf and notwithstanding that any Secured Party may have had notice or knowledge of any Default or Event of Default or incorrect representation or warranty at the time any credit is extended under the Loan Documents, and shall continue in full force and effect until this Security Agreement shall terminate.

(b) In the event any one or more of the provisions contained in this Security Agreement or any other Loan Document should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired thereby (it being understood that the invalidity of a particular provision in a particular jurisdiction shall not in and of itself affect the validity of such provision in any other jurisdiction). The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or

-16-

HF 3086807v.6 #10675/0005

unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

Section 16.    GOVERNING LAW

THIS SECURITY AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

Section 17.    Counterparts

This Security Agreement may be executed in two or more counterparts, each of which shall constitute an original, but all of which, when taken together, shall constitute but one contract (subject to Section 14), and shall become effective as provided in Section 14.    Delivery of an executed counterpart of this Security Agreement by facsimile transmission shall be as effective as delivery of a manually executed counterpart of this Security Agreement.

Section 18.    Headings

Section headings used herein are for convenience of reference only, are not part of this Security Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Security Agreement.

Section 19.    Jurisdiction; Consent to Service of Process

(a) Each party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of any New York State court or federal court of the United States of America sitting in the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Security Agreement or the other Loan Documents, or for recognition or enforcement of any judgment, and each of the parties hereto hereby irrevocably and unconditionally agrees that, to the extent permitted by applicable law, all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by applicable law, in such federal court.    Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.    Nothing in this Security Agreement shall affect any right that any Secured Party or any other party hereto may otherwise have to bring any action or proceeding relating to this Security Agreement or the other Loan Documents in the courts of any jurisdiction.

(b) Each of the parties hereto hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out

-17-

BPD0017

of or relating to this Security Agreement or the other Loan Documents in any court referred to in paragraph (a) of this Section. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c)  Each Grantor hereby irrevocably appoints Corporation Service Company, with an address on the date hereof at 80 State Street, Albany, New York 12207-2543, United States of America (the "New York Process Agent"), as process agent in its name, place and stead to receive and forward service of any and all writs, summonses and other legal process in any suit, action or proceeding brought in New York, agrees that such service in any such suit, action or proceeding may be made upon the New York Process Agent and agrees to take all such action as may be necessary to continue said appointment in full force and effect or to appoint another agent so that such Grantor will at all times have an agent in New York for service of process for the above purposes.  Each party to this Security Agreement irrevocably consents to service of process in the manner provided for herein. Nothing in this Security Agreement will affect the right of any Secured Party or any other party to this Security Agreement to serve process in any other manner permitted by law.

(d)  To the extent that any Grantor has or hereafter may acquire any immunity from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, execution or otherwise) with respect to itself or its property, such Grantor hereby irrevocably waives such immunity in respect of its obligations under this Agreement and any other Loan Document.

Section 20.    WAIVER OF JURY TRIAL

EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS SECURITY AGREEMENT. EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY SECURED PARTY OR ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH SECURED PARTY OR OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT, THE SECURED PARTIES  AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ACCEPT OR ENTER INTO THIS SECURITY AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

HF 3086807v.6 #10675/0005

BPD0018

Section 21.    LIMITATION OF LIABILITY

EXCEPT AS PROHIBITED BY LAW, EACH GRANTOR HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. EACH GRANTOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY THE ADMINISTRATIVE AGENT OR ANY OTHER SECURED PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE SECURED PARTIES WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR THE SECURED PARTIES TO ACCEPT THIS AGREEMENT, THE NOTES AND THE OTHER LOAN DOCUMENTS AND TO EXTEND CREDIT TO THE BORROWER.

Section 22.    RELATION TO OTHER SECURITY DOCUMENTS

(a) The provisions of this Agreement supplement the provisions of any real estate mortgage or deed of trust or any other security agreement granted by a Grantor to the Administrative Agent or the Secured Parties and securing the payment or performance of any of the Obligations. Nothing contained in any such real estate mortgage or deed of trust or other security agreement shall derogate from any of the rights or remedies of the Bank hereunder.

(b) Each Grantor shall at any time and from time to time take such steps as the Administrative Agent may reasonably request for the Administrative Agent (a) to obtain an acknowledgement, in form and substance satisfactory to the Administrative Agent, of any bailee having possession of any of the Collateral that the bailee holds such Collateral for the Administrative Agent, (b) to obtain "control" of any investment property, deposit accounts (and any and all monies, securities and other property of the Debtor, and the proceeds thereof now or hereafter held or received by or in transit to the Administrative Agent from or for the Debtor, whether for safekeeping, custody, pledge, transmission, collection or otherwise), letter-of-credit rights or electronic chattel paper (as such terms are defined in Article 9 of the UCC with corresponding provisions as defined in Article 9 of the UCC relating to what constitutes "control" for such items of Collateral), with any agreements establishing control to be in form and substance satisfactory to the Administrative Agent, and (c) otherwise to insure the continued perfection and priority of the Administrative Agent's security interest in any of the Collateral and of the preservation of its rights therein.

(c) In the event that (i) in addition to this Agreement any Grantor is a party to one or more other security, pledge or similar agreements providing for a security interest in personal property in favor of the Administrative Agent (collectively the "Other

-19-

BPD0019

Collateral Agreements"), and (ii) the collateral described in this Agreement and the Other Collateral Agreements is not the same, then, in such event, this Agreement and the Other Collateral Agreements shall be read together as one agreement such that the Obligations shall be deemed secured by the collateral described in each of such agreements.

Section 23.    This is an international transaction in which payment of the Obligations in United States Dollars ("dollars") is of the essence, and dollars shall be the currency of account in all events.  The payment obligation of the Grantors shall not be discharged by an amount paid in another currency or in another place, whether pursuant to a judgment or otherwise, to the extent that the amount so paid on prompt conversion to dollars under normal banking procedures does not yield the amount of dollars due under the Loan Documents.  In the event that any payment by the Grantors, whether pursuant to a judgement or otherwise, upon conversion and transfer does not result in payment of such amount of dollars as is required, the Administrative Agent shall have a separate cause of action against the Grantors for the additional amount necessary to yield the amount due and owing to the Secured Parties under the Loan Documents.

*[remainder of page intentionally left blank]*

HF 3086807v.6 #10675/0005

BPD0020

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Security Agreement as of the day and year first above written.



INTERBOJOS, LTD.

By: _____

Name: ANGEL ROSARIO

Title: PRESIDENT

**Chief Executive Office:**

_____

**Country and State of Organization:**  British Virgin Islands

**Other Locations of Collateral:**

_____


INTERAMERICANA APPAREL COMPANY, INC.

By: _____

Name: ANGEL ROSARIO

Title: PRESIDENT

**Chief Executive Office:**

_____

**Country and State of Organization:**    British Virgin Islands

**Other Locations of Collateral:**

_____

HF 3086807v.6 #10675/0005

BPD0021

INTERAMERICANA PRODUCTS
INTERNATIONAL (PANAMA) S.A.

By: _____
Name: ANSEL ROSARIO
Title: PRESIDENT

Chief Executive Office:

_____

Country and State of Organization:    Panama
Other Locations of Collateral:

_____


J.B.S., S.A.

By: _____
Name: ANSEL ROSARIO
Title: PRESIDENT

Chief Executive Office:

_____

Country and State of Organization:    Dominican Republic
Other Locations of Collateral:

_____


JUAN BOJOS C. POR A.

By: _____
Name: ANSEL ROSARIO
Title: PRESIDENT

Chief Executive Office:

_____

Country and State of Organization:    Dominican Republic
Other Locations of Collateral:

_____


HF 3086807v.6 #10675/0005

BPD0022

**BOJOS LEATHER, LTD.**

By: _____
Name: ANGEL ROSARIO
Title: PRESIDENT

Chief Executive Office:

_____

Country and State of Organization:    Grand Cayman
Other Locations of Collateral:

_____

**BOJOS MANUFACTURING LTD.**

By: _____
Name: ANGEL ROSARIO
Title: PRESIDENT

Chief Executive Office:

_____

Country and State of Organization:    Grand Cayman
Other Locations of Collateral:

_____

**BANCO POPULAR
DOMINICANO, C. POR A., as
Administrative Agent**

By: _____
Name: ENRIQUE RAMIREZ
Title: VICE PRESIDENT

HF 3086807v.6 #10675/0005

BPD0023

## SCHEDULE I TO SECURITY AGREEMENT

### GRANTORS

**GRANTOR**                                              Address for Notices

**Interbojos, Ltd.**
a company organized under the laws of the British Virgin Islands

**Interamericana Apparel Company, Inc.**
a company organized under the laws of the British Virgin Islands

**Interamericana Products International (Panama), S.A.**
a company organized under the laws of Panama

**J.B.S., S.A.**
a company organized under the laws of the Dominican Republic

**Juan Bojos, C. por A.**
a company organized under the laws of the Dominican Republic

**Bojos Leather, Ltd.**
a company organized under the laws of Grand Cayman

**Bojos Manufacturing Ltd.**
a company organized under the laws of Grand Cayman

[Name of Grantor(s)]
Building A, Central Street, Third Phase
Industrial Free Zone of Santiago
Santiago, Dominican Republic
Attention:  Tomas Fernandez
Telephone:  809-575-0007
Facsimile: _____

With a copy to:
Dr. J.A. Vega Imbert & Assocs.
Citibank Building, 2d Floor
56 Del Sol and Mella Streets
Santiago, Dominican Republic
Attention: Jose Ramon Vega
Telephone: (809) 582-8146
Facsimile:  (809) 581-9009

HF 3086807v.6 #10675/0005

**Results Summary**                                          O R D E R   R E S U L T S

**Filings Summary**

| Entity Name | Jurisdiction | Result | Filing Date | File Number | Book Number | Page Number | Date Evidence Sent to Client |
|---|---|---|---|---|---|---|---|
| INTERAMERICANA APPAREL COMPANY, INC. (Debtor)/ BANCO POPULAR DOMINICANO, C. POR A., AS AGENT (Secured Party) | DC-RECORDER OF DEEDS | Filed | 02/10/2006 | 2006018522 | | | |

**CLOSE**

BPD0025

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

Interg0los

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |
|---|
| Interamericana Apparel Company, Inc. |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Building A, Central St., Third Phase, Ind'l Free Zone of Santiago | Santiago | | | DOM |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | CO | | British Virgin Islands | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |
|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |
|---|
| Banco Popular Dominicano, C. POR A., as Agent |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Torre Popular Av. John F. Kennedy No. 20 Apartado Postal 1441* | Santo Domingo | | | DOM |

**4. This FINANCING STATEMENT covers the following collateral:**

All accounts receivable, deposit accounts, general intangibles and related items of Debtor, as more fully described in one or more security agreements made by Debtor in favor of Secured Party, wherever located, whether now, owned or hereafter acquired.

All sums and claims for sums due, to become due or otherwise credited to the account of Debtor under, arising out of or in any way connected with any and all factoring agreements now or hereafter entered into between Debtor and a factor, including all amendments and modifications thereto or replacements thereof, all proceeds thereof and any other rights of the Debtor to the receipt of money thereunder.

*Zona Postal 1

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA** 10675-0005

DC-Recorder Of Deeds

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

BPD0026

**Results Summary**                                        O R D E R  R E S U L T S

▓ Filings Summary▮

| Entity Name | Jurisdiction | Result | Filing Date | File Number | Book Number | Page Number | Date Evidence Sent to Client | |
|---|---|---|---|---|---|---|---|---|
| INTERBOJOS, LTD. (Debtor)/ BANCO POPULAR DOMINICANO, C. POR A., AS AGENT (Secured Party) | DC-RECORDER OF DEEDS | Filed | 02/10/2006 | 2006018523 | | | | 8 |

▓ CLOSE

BPD0027

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

Interbojos

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Interbojos, Ltd. | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS Building A, Central St., Third Phase, Ind'l Free Zone of Santiago | CITY Santiago | STATE | POSTAL CODE | COUNTRY DOM |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CO | 1f. JURISDICTION OF ORGANIZATION British Virgin Islands | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Banco Popular Dominicano, C. POR A., as Agent | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS Torre Popular Av. John F. Kennedy No. 20 Apartado Postal 1441* | CITY Santo Domingo | STATE | POSTAL CODE | COUNTRY DOM |

**4. This FINANCING STATEMENT covers the following collateral:**

All accounts receivable, deposit accounts, general intangibles and related items of Debtor, as more fully described in one or more security agreements made by Debtor in favor of Secured Party, wherever located, whether now owned or hereafter acquired.

All sums and claims for sums due, to become due or otherwise credited to the account of Debtor under, arising out of or in any way connected with any and all factoring agreements now or hereafter entered into between Debtor and a factor, including all amendments and modifications thereto or replacements thereof, all proceeds thereof and any other rights of the Debtor to the receipt of money thereunder.

*Zona Postal 1

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [if applicable] [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA** 10675-0005

DC-Recorder Of Deeds

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Corporation Service Company
2711 Centerville Rd. Ste. 400
Wilmington, DE 19808

BPD0028

**Results Summary**                                          O R D E R   R E S U L T S

■❚Filings Summary❚

| Entity Name | Jurisdiction | Result | Filing Date | File Number | Book Number | Page Number | Date Evidenc Sent to Clien |
|---|---|---|---|---|---|---|---|
| INTERAMERICANA PRODUCTS INTERNATIONAL (PANAMA), S.A. (Debtor)/ BANCO POPULAR DOMINICANO, C. POR A., AS AGENT (Secured Party) | DC-RECORDER OF DEEDS | Filed | 02/10/2006 | 2006018524 | | | |

❽   **CLOSE**

BPD0029

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:    (Name and Address)

Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Interamericana Products International (Panama), S.A. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Building A,Central St., Third Phase,Ind'l Free Zone of Santiago | Santiago | | | DOM |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | CO | Panama | | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Banco Popular Dominicano, C. POR A., as Agent | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Torre Popular Av. John F. Kennedy No. 20 Apartado Postal 1441* | Santo Domingo | | | DOM |

**4. This FINANCING STATEMENT covers the following collateral:**

All accounts receivable, deposit accounts, general intangibles and related items of Debtor, as more fully described in one or more security agreements made by Debtor in favor of Secured Party, wherever located, whether now owned or hereafter acquired.

All sums and claims for sums due, to become due or otherwise credited to the account of Debtor under, arising out of or in any way connected with any and all factoring agreements now or hereafter entered into between Debtor and a factor, including all amendments and modifications thereto or replacements thereof, all proceeds thereof and any other rights of the Debtor to the receipt of money thereunder.

*Zona Postal 1

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA    10675-0005
DC-Recorder Of Deeds

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

BPD0030

**Results Summary**

ORDER RESULTS

**Filings Summary**

| Entity Name | Jurisdiction | Result | Filing Date | File Number | Book Number | Page Number | Date Evidence Sent to Client | |
|---|---|---|---|---|---|---|---|---|
| J.B.S., S.A. (Debtor)/ BANCO POPULAR DOMINICANO, C. POR A., AS AGENT (Secured Party) | DC-RECORDER OF DEEDS | Filed | 02/10/2006 | 2006018525 | | | | 8 |

CLOSE

BPD0031

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

```
Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808
```

InterBojos

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| J.B.S., S.A. | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS Building A, Central St., Third Phase, Ind'l Free Zone of Santiago | CITY Santiago | | STATE | POSTAL CODE | COUNTRY DOM |
| 1d. SEE INSTRUCTIONS | ADDL INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CO | 1f. JURISDICTION OF ORGANIZATION Dominican Republic | 1g. ORGANIZATIONAL ID #, if any | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADDL INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Banco Popular Dominicano, C. POR A., as Agent | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS Torre Popular Av. John F. Kennedy No. 20 Apartado Postal 1441* | CITY Santo Domingo | STATE | POSTAL CODE | COUNTRY DOM |

**4. This FINANCING STATEMENT covers the following collateral:**

All accounts receivable, deposit accounts, general intangibles and related items of Debtor, as more fully described in one or more security agreements made by Debtor in favor of Secured Party, wherever located, whether now owned or hereafter acquired.

All sums and claims for sums due, to become due or otherwise credited to the account of Debtor under, arising out of or in any way connected with any and all factoring agreements now or hereafter entered into between Debtor and a factor, including all amendments and modifications thereto or replacements thereof, all proceeds thereof and any other rights of the Debtor to the receipt of money thereunder.

*Zona Postal 1

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 | |
| 8. OPTIONAL FILER REFERENCE DATA 10675-0005 | | | | | | |

DC-Recorder Of Deeds

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Corporation Service Company
2711 Centerville Rd. Ste. 400
Wilmington, DE 19808

BPD0032

**Results Summary**                                                        O R D E R   R E S U L T S

▓ Filings Summary

| Entity Name | Jurisdiction | Result | Filing Date | File Number | Book Number | Page Number | Date Evidence Sent to Client | |
|---|---|---|---|---|---|---|---|---|
| JUAN BOJOS, C. POR A. (Debtor)/ BANCO POPULAR DOMINICANO, C. POR A., AS AGENT (Secured Party) | DC-RECORDER OF DEEDS | Filed | 02/10/2006 | 2006018526 | | | | 8 |

▓ **CLOSE**

BPD0033

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

Inter Bojos

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |  |  |  |  |  |
|---|---|---|---|---|---|
| Juan Bojos, C. por A. |  |  |  |  |  |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Building A,Central St., Third Phase,Ind'l Free Zone of Santiago | Santiago |  |  | DOM |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
|  |  | CO | Dominican Republic |  |  |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
|  |  |  |  |  |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |  |  |  |  |  |
|---|---|---|---|---|---|
| Banco Popular Dominicano, C. POR A., as Agent |  |  |  |  |  |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Torre Popular Av. John F. Kennedy No. 20 Apartado Postal 1441* | Santo Domingo |  |  | DOM |

4. This FINANCING STATEMENT covers the following collateral:

All accounts receivable, deposit accounts, general intangibles and related items of Debtor, as more fully described in one or more security agreements made by Debtor in favor of Secured Party, wherever located, whether now owned or hereafter acquired.

All sums and claims for sums due, to become due or otherwise credited to the account of Debtor under, arising out of or in any way connected with any and all factoring agreements now or hereafter entered into between Debtor and a factor, including all amendments and modifications thereto or replacements thereof, all proceeds thereof and any other rights of the Debtor to the receipt of money thereunder.

*Zona Postal 1

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA   10675-0005

DC-Recorder Of Deeds

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

BPD0034

**Results Summary**                                ORDER RESULTS

**▣ Filings Summary**

| Entity Name | Jurisdiction | Result | Filing Date | File Number | Book Number | Page Number | Date Evidence Sent to Client | |
|---|---|---|---|---|---|---|---|---|
| BOJOS LEATHER, LTD. (Debtor)/ BANCO POPULAR DOMINICANO, C. POR A., AS AGENT (Secured Party) | DC-RECORDER OF DEEDS | Filed | 02/10/2006 | 2006018527 | | | | 8 |

**▣  CLOSE**

BPD0035

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

Inter Bojos

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |
| --- |
| Bojos Leather, Ltd. |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| Building A, Central St., Third Phase, Ind'l Free Zone of Santiago | Santiago | | | DOM |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
| --- | --- | --- | --- | --- |
| | | CO | Grand Cayman | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |
| --- |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
| --- | --- | --- | --- | --- |
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |
| --- |
| Banco Popular Dominicano, C. POR A., as Agent |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| --- | --- | --- | --- |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| Torre Popular Av. John F. Kennedy No. 20 Apartado Postal 1441* | Santo Domingo | | | DOM |

**4. This FINANCING STATEMENT covers the following collateral:**

All accounts receivable, deposit accounts, general intangibles and related items of Debtor, as more fully described in one or more security agreements made by Debtor in favor of Secured Party, wherever located, whether now owned or hereafter acquired.

All sums and claims for sums due, to become due or otherwise credited to the account of Debtor under, arising out of or in any way connected with any and all factoring agreements now or hereafter entered into between Debtor and a factor, including all amendments and modifications thereto or replacements thereof, all proceeds thereof and any other rights of the Debtor to the receipt of money thereunder.

*Zona Postal 1

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
| --- | --- | --- | --- | --- | --- | --- |

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum | (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| --- | --- | --- | --- | --- | --- | --- | --- |

| 8. OPTIONAL FILER REFERENCE DATA  10675-0005 |
| --- |
| DC-Recorder Of Deeds |

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808

BPD0036

**Results Summary**                                     **O R D E R   R E S U L T S**

**Filings Summary**

| Entity Name | Jurisdiction | Result | Filing Date | File Number | Book Number | Page Number | Date Evidenc Sent to Clien |
|---|---|---|---|---|---|---|---|
| BOJOS MANUFACTURING LTD. (Debtor)/ BANCO POPULAR DOMINICANO, C. POR A., AS AGENT (Secured Party) | DC-RECORDER OF DEEDS | Filed | 02/10/2006 | 2006018528 | | | |

**CLOSE**

BPD0037

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

```
Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808
```

I n t e r 8 0 j o s

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Bojos Manufacturing Ltd. | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |

| 1c. MAILING ADDRESS Building A,Central St., Third Phase,Ind'l Free Zone of Santiago | CITY Santiago | STATE | POSTAL CODE | COUNTRY DOM |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CO | 1f. JURISDICTION OF ORGANIZATION Grand Cayman | 1g. ORGANIZATIONAL ID #, if any □ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any □ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Banco Popular Dominicano, C. POR A., as Agent | | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| | | | | | |

| 3c. MAILING ADDRESS Torre Popular Av. John F. Kennedy No. 20 Apartado Postal 1441* | CITY Santo Domingo | STATE | POSTAL CODE | COUNTRY DOM |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

```
All accounts receivable, deposit accounts, general intangibles and related items of Debtor, as
more fully described in one or more security agreements made by Debtor in favor of Secured Party,
wherever located, whether now owned or hereafter acquired.

All sums and claims for sums due, to become due or otherwise credited to the account of Debtor
under, arising out of or in any way connected with any and all factoring agreements now or
hereafter entered into between Debtor and a factor, including all amendments and modifications
thereto or replacements thereof, all proceeds thereof and any other rights of the Debtor to the
receipt of money thereunder.

*Zona Postal 1
```

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. □ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional] [ADDITIONAL FEE] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA  10675-0005
DC-Recorder Of Deeds

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

```
Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808
```

BPD0038



BANCO POPULAR DOMINICANO, C. POR A.
AV. JOHN F. KENNEDY #2C, ARROYO HONDO
SANTO DOMINGO, REPUBLICA DOMINICANA

Filial del GRUPO POPULAR

March 20, 2007

<u>By Facsimile and Overnight Courier</u>

Maureen Connolly
Levi's Strauss & Co. Financial Service Center
3125 Chad Drive Eugene, OR 97408
Tel. 541-242-7110

Re: Interamericana Apparel Company, Inc.

Dear Sir or Madam:

Please be advised that pursuant to a security agreement dated as of October, 2005, Interamericana Apparel Company, Inc. ("IAC") granted to BANCO POPULAR DOMINICANO, C. POR A., as agent ("Lender") a Uniform Commercial Code security interest and assignment in all of its accounts receivable (past, present, and future). Pursuant to that security agreement and applicable law, Lender is now entitled to receive any and all payments now or hereafter due to IAC from you.  Please be advised that pursuant to Uniform Commercial Code Sections 9-406(a) and 9-607(a)(1), Lender is notifying you to immediately make payment to Lender of all amounts on any receivable due to IAC.  Accordingly, effective immediately, please forward all payments due on your accounts with IAC directly to us at the following address:

BANCO POPULAR DOMINICANO, C. POR A., as agent
Account No. 147648
BPD Bank
90 Broad Street
5th Floor
New York, NY 10004
Attn: Omar Guerrero

Please be advised that under the law, if you withhold payment or make payment to anyone other than Lender at the address set forth above, you will nonetheless remain liable to Lender for such amounts.

BPD0039

BANCO POPULAR DOMINICANO
AV. JOHN F KENNEDY #20
SANTO DOMINGO, REPUBLICA DOMINICANA

THE 481 GRUPO POPULAR

**POPULAR** If you have any questions regarding the foregoing instructions, please contact the undersigned at (809) 544-6942. Thank you for your prompt attention to this matter.

BANCO POPULAR DOMINICANO, C. POR A.,
as agent

By: _____
Name: Miguel Núñez
Title: Vicepresidente Área Análisis y
Formalización Créditos Empresariales

By: _____
Name: Fernando Olivero
Title: Vicepresidente Área de Normalización de
Créditos Corporativos

cc:    Interamericana Apparel Company, Inc.

BPD0040

Rastree este envío por medio de la Internet → http://www.dhl.com

Mencione este número de Envío para consultas

**DHL EXPRESS**

**GUIA AEREA** (No negociable)

ORIGEN    CÓDIGO DE DESTINO

**6 6 2 2 6 1 1 7 9 6**

6622611796

**1 | Número de cuenta y seguro del envío**

Cobrar al: ☐ Remitente  ☐ Destinatario  ☐ Tercero

☐ Efectivo
☐ Cheque
☐ Tarjeta de Crédito

No. de cuenta de quien paga

Seguro del Envío ver al Reverso

☐ Sí, esté asegurado (en moneda local)

No todas las formas de pago están disponibles en todos los países.

**2 | Enviado por (remitente)**

No. de cuenta: 777018896    Nombre del remitente: Maria Eugenia Batista

Referencia del remitente (en la factura aparecerán los 12 primeros caracteres)

Nombre de la compañía:

Dirección:

SANTO DOMINGO,
DOMINICAN REPUBLIC

Código postal:    Teléfono/Fax/Correo electrónico (requerido):

**3 | Para (Destinatario)**

Nombre de la Compañía: Levi's Strauss y Co. Financial Center

Dirección de entrega  DHL no entrega en apartados postales

3125 Chael Drive Eugene, OR

Código postal: 97408    País: U.S.A

Persona a contactar: Lauren Connolly    Teléfono/Fax/Correo electrónico (requerido): 541-242-7110

**4 | Detalles del envío**

No. de piezas | Peso total | Dimensiones
| | Piezas | Largo | Ancho | Alto
| | @ | x | x
| | @ | x | x
| | @ | x | x
kg | | @ | x | x

**5 | Detalles del envío**

Descripción del contenido y cantidad

**6 | Sólo envíos por aduana (WPX)**

Adjuntar el original y tres copias de la factura proforma o Comercial

Número de Licencia de Exportación (si aplica) | No. IVA/GST del Remitente

Valor declarado indicar moneda | Código aduanero concertado para el producto si se aplica

TIPO DE EXPORTACIÓN  ☐ PERMANENTE  ☐ REPARACIÓN/DEVOLUCIÓN  ☐ TEMPORAL

Impuestos/derechos de destino (Si se deja en blanco, el destinatario los paga).

☐ Destinatario  ☐ Remitente  ☐ Otro

**7 | Autorización y firma del remitente**

Yo/nosotros convengo/convenimos en que a este envío se aplican los términos estándar de DHL y limitan la responsabilidad de DHL. También se puede aplicar el Convenio de Varsovia (ver al reverso). También entiendo/entendemos que este envío no contiene dinero en efectivo o artículos peligrosos (ver al reverso).

Firma    Fecha  /  /

**8 | Productos y Servicios**

DHL Worldwide Express

☐ Sujeto a Derechos  ☐ No Sujeto a Derechos
☐ Express Envelope (<200g)

Otros productos

☐ WORLDMAIL  ☐ Domestico
☐ Otros

Opciones de servicio, se puede aplicar cargos adicionales

☐ Entrega el Sábado  ☐ Recogida especial

☐ Notificación de entrega

☐ Priority
☐ Standard
☐ Other

BPD0041